The STATE of Ohio, Appellee,

v.

McCANN, Appellant.

[Cite as *State v. McCann* (1997), 120 Ohio App.3d 505.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960581.

Decided June 18, 1997.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Tina I. Ernst*, Assistant Prosecuting Attorney, for appellee.

*Cathy R. Cook*, for appellant.

PAINTER, Presiding Judge.

Defendant-appellant Bradley McCann was indicted for aggravated robbery with a gun specification. McCann moved to suppress identification evidence, and the trial court held a hearing on this issue. During the first day of this hearing, it became apparent that McCann had turned down a plea-bargain arrangement that the trial court felt was "very generous." At the end of the day, the trial court continued the hearing in progress to the following morning. Upon returning the next morning, McCann had a change of heart and pleaded guilty to robbery with an agreed indefinite sentence of three to fifteen years' imprisonment. The trial court conducted an inquiry into whether McCann knowingly, intelligently, and voluntarily waived his constitutional rights. During this colloquy, the trial judge addressed each right as required by Crim.R. 11(C), except one—McCann's right to trial by jury, which went unmentioned and unexplored. The trial court accepted McCann's plea.

Before the sentencing date, McCann moved to withdraw his guilty plea on the basis that he had been unduly coerced by the trial judge into accepting the plea. After a brief hearing, the court overruled this motion. The case was transferred for sentence to another judge, and McCann renewed his motion, which was again overruled. That trial judge then imposed an indefinite sentence of three to fifteen years.

McCann has appealed and argues that the trial court erred by (1) accepting his guilty plea despite failing to inform him of his right to jury trial under Crim.R. 11(C), (2) overruling his first motion to withdraw his plea, and (3) overruling his second motion to withdraw his plea.

It is mandatory in Ohio that each and every right under Crim.R. 11(C) be explained in a manner reasonably intelligible to a defendant entering a guilty plea. The seminal case on this issue, *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, states in its syllabus:

■ "1. Prior to accepting a guilty plea from a criminal defendant, the trial court *must inform the defendant that he is waiving* his privilege against compulsory self-incrimination, *his right to jury trial,* his right to confront his accusers, and his right of compulsory process of witnesses. (*Boykin v. Alabama* [1969], 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274], followed.)

■ "2. Failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, *including the right to trial by jury,* is not grounds for vacating a plea as long as the record shows that *the trial court explained these rights in a manner reasonably intelligible to that defendant.* (*State v. Caudill* [1976], 48 Ohio St.2d 342 [2 O.O.3d 467, 358 N.E.2d 601], modified.)" (Emphasis added.)

Crim.R. 11(C)(2) states that the judge shall not accept a plea *"without addressing the defendant personally and:* * * * *(c) [i]nforming him of and determining that he understands that by his plea he is waiving his right to jury trial."* (Emphasis added.) Is not mentioning something informing someone of it?

■ Here, even the dissent admits that the record shows that the trial court failed even to mention the right to jury trial. How the dissent can convert a failure to mention a right as important as the right to jury trial into a "reasonably intelligible explanation" is beyond reckoning. The right to jury trial is so important that it is specifically named in *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and it is the only right mentioned specifically in both syllabus paragraphs of *Ballard.* The dissent would have us hold that if the judge explains most of the Crim.R. 11(C) rights, we can assume that the defendant understands the rest. The dissent quotes a line in *Ballard* about "formalistic litany," not once, but twice. But even that line is quoted out of context. In context, the *Ballard* court stated:

"Therefore, *we hold that a rote recitation of Crim.R. 11(C) is not required,* and failure to use the exact language of the rule is not fatal to the plea. Rather, the focus, upon review, is *whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to that defendant.* To

hold otherwise would be to elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused." (Emphasis added.) 66 Ohio St.2d at 480, 20 O.O.3d at 401–402, 423 N.E.2d at 120.

The dialogue between the trial court and the accused did not contain *any* explanation of or reference to a trial by jury. We do not require a rote recitation. We find *Ballard* clear in its syllabus and its text that the trial court must at a minimum explain or refer to the right to trial by jury in a manner reasonably intelligible to the defendant before accepting a guilty plea.

The case at bar closely parallels *State v. Sturm* (1981), 66 Ohio St.2d 483, 20 O.O.3d 403, 422 N.E.2d 853, in which the trial court advised the accused of all of his *Boykin* rights, with one exception—the right to confront one's accusers. The Ohio Supreme Court held in *Sturm* that this failure to inform the accused of even one right renders the plea defective.

*State v. DeArmond* (1995), 108 Ohio App.3d 239, 670 N.E.2d 531, should be overruled, or at least limited to its facts, which are distinguishable from the facts in this case. In *DeArmond,* the defendant at least signed a piece of paper stating the rights he was waiving, including the right to jury trial. In this case, the record is devoid of *any* showing that McCann was in any way informed of his right to trial by jury—not even the scrap of paper that could be used to bring this case within the *DeArmond* decision. The mandate of *Boykin, Ballard,* and Crim.R. 11(C) is that we will not presume that a right that goes unmentioned by the trial court was knowingly, intelligently, and voluntarily waived.

We note that the absence of a written jury waiver would require reversal *even if* the trial judge had complied with Crim.R. 11. Crim.R. 23(A); R.C. 2945.05. In *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766, the Ohio Supreme Court held that "the waiver must be in writing, signed by the defendant, filed in the criminal action, and made part of the record thereof." *Id.,* paragraph one of the syllabus. See, also, *State v. Fish* (1995), 104 Ohio App.3d 236, 661 N.E.2d 788. Accordingly, we sustain McCann's first assignment of error.

Because we hold that the record fails to demonstrate that McCann entered his guilty plea knowingly, intelligently, and voluntarily, we hold that McCann's second and third assignments of error are moot. Under App.R. 12(A)(1)(c), we will not address those assignments.

From our ruling on the first assignment of error, we vacate the plea of guilty and remand the cause for further proceedings in accordance with law and this decision.

*Judgment reversed*
*and cause remanded.*

MARIANNA BROWN BETTMAN, J., concurs separately.

GORMAN, J., dissents.

MARIANNA BROWN BETTMAN, Judge, concurring.

The importance of the trial court's strict and literal compliance with the statutory requirement dealing with a jury waiver caused the Ohio Supreme Court to reverse an aggravated murder death penalty conviction and remand the cause in *State v. Pless*, because there was no written jury waiver in the record. *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766. The fact that the trial transcript indicated that the defendant had voluntarily signed a written waiver of his right to a jury trial and the fact that the court had journalized an entry that the defendant had waived his right to a jury trial was not enough to meet the requirements of R.C. 2945.05.

Unlike the literal compliance required in R.C. 2945.05, the Ohio Supreme Court does not require strict and literal compliance in a Crim.R. 11(C) colloquy, even with the *Boykin* rights. However, the high court has not adopted a substantial compliance or lack-of-prejudice test for these rights either. As noted in *State v. DeArmond* (1995), 108 Ohio App.3d 239, 242, 670 N.E.2d 531, 533, "the United States Constitution requires the record to show that the defendant both voluntarily *and* knowingly waived certain constitutional rights." (Emphasis added.) One of those rights is the right to trial by jury, the right implicated in this appeal.

As is ably discussed in the majority opinion in *DeArmond*, when a *Boykin* right is implicated, the heightened standard of inquiry set out in *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, is required. When we apply this heightened standard to the colloquy in this case, it is significant to me that here, as in *Pless*, there is no written jury waiver in the record before this court.

I join the majority today and write separately for two reasons. First, I do not want my concurrence in *DeArmond* to be overread. It is limited to the facts of that particular case. Even with that limitation, to me the *DeArmond* colloquy was at the minimum level of compliance required for a *Boykin* right, and there was a written jury waiver in the record. Second, I write out of my concern that we are doing appellate gymnastics to uphold trial judges who are just plain forgetting certain rights in the Rule 11 colloquy. This is easily corrected at the trial level through the use of a simple checklist. Most assuredly, anyone can have an off day and miss something by inadvertence, but we are reviewing more of these colloquies for pure misses than we should be.

Turning to the merits of the appeal, I am afraid that I cannot agree with the dissent that telling the defendant at a suppression hearing to "listen very

carefully to what the evidence is going to show here this afternoon because it is going to come right back in front of 12 people" adequately informed him in his plea hearing *the next day* that he was giving up the right to trial by jury. I just do not find that level of inquiry heightened enough.

GORMAN, Judge, dissenting.

In my view, the broad use of this court's supervisory power to trump McCann's guilty plea goes beyond the scope of judicial review and improperly intrudes upon the sentencing function traditionally reserved to trial courts. The result is micromanagement of the trial court without reflection upon whether the error is of substance.

Although the trial judge did not explicitly inform McCann of his right to trial by jury, there is no doubt from the record that McCann voluntarily and intelligently accepted the plea bargain with its preagreed sentence. In fact, the very terms of this plea bargain and guilty plea were at the instigation of McCann and his counsel. Not once, at his three separate appearances, did McCann or his counsel intimate that had he just heard mention of his constitutional right to a jury trial he would have withdrawn from the plea bargain and gone to trial.

Waiver of *Boykin* rights cannot be presumed from a silent record, but the record of McCann's guilty plea and sentence is proof enough that his "plea represent[ed] a voluntary and intelligent choice among the alternative courses of action open to" him. *North Carolina v. Alford* (1970), 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168, citing *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, with approval; *Parke v. Raley* (1992), 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (reaffirming voluntariness as touchstone of analysis); *State v. Ballard* (1981), 66 Ohio St.2d 473, 479–480, 20 O.O.3d 397, 400–402, 423 N.E.2d 115, 119. By vacating McCann's guilty plea in light of this record, the majority ignores *Ballard's* admonition and chooses to "elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused." *Id.* at 480, 20 O.O.3d at 401–402, 423 N.E.2d at 120.

McCann's guilty plea satisfies federal guidelines for constitutional review of state court proceedings. The sole inquiry by federal courts to determine if a state court accused waived his *Boykin* rights is whether from the record or from other extrinsic evidence the guilty plea was intelligently, knowingly, and voluntarily entered. *Dunn v. Simmons* (C.A.6, 1989), 877 F.2d 1275, 1277, citing *Roddy v. Black* (C.A.6, 1975), 516 F.2d 1380, 1384.

In *State v. DeArmond* (1995), 108 Ohio App.3d 239, 670 N.E.2d 531, we discussed the broader rule-based analysis pertaining to the waiver of *Boykin* rights in the context of Crim.R. 11(C). When constitutionally mandated rights are at stake, defendants must be "meaningfully informed" of the effect of their

waiver. The test is "whether the trial court explained or referred to the right in a manner reasonably intelligible to the defendant." *State v. Ballard,* 66 Ohio St.2d at 480, 20 O.O.3d at 401, 423 N.E.2d at 120.

Although, for purposes of appellate review, the contours of when the trial court has "meaningfully informed" the accused are unclear, the Ohio Supreme Court cautions that matters of reality, and not mere ritual, should be controlling. *Id.* at 480–481, 20 O.O.3d at 401–402, 423 N.E.2d at 119–120. Clearly, "the best method of informing a defendant of his constitutional rights is to use the language contained in Crim.R. 11(C)"; however, when that is not done, whether the accused is meaningfully informed depends upon the unique circumstances of each case. *Id.* at 479, 20 O.O.3d at 401, 423 N.E.2d at 119. Knowledge of the accused's rights "may be looked to in the totality of the matter." *Id.* at 481, 20 O.O.3d at 402, 423 N.E.2d at 120. If the trial court neglects "in any manner to inform" the accused concerning waiver of the *Boykin* rights, the guilty plea will be vacated. *State v. Sturm* (1981), 66 Ohio St.2d 483, 20 O.O.3d 403, 422 N.E.2d 853.

From the outset, McCann and his counsel pursued this plea bargain with noteworthy singleness of purpose. At the hearing on the motion to suppress, his counsel informed the judge that he had advised McCann to accept a plea bargain in which the state would reduce the aggravated robbery count to robbery and dismiss the firearm specification. The judge, mistakenly believing that the state had agreed to a negotiated plea, said to McCann, "Listen very carefully to what the evidence is going to show here this afternoon, because it is going to come right back in front of *12 people.*" (Emphasis added.) The prosecutor interrupted, however, to advise the judge that the victim refused to consent to any reduction, and that he had had no discussions with McCann or his counsel about a plea bargain.

The hearing on McCann's motion to suppress then commenced. Defense counsel cross-examined the victim at length, necessitating a continuance to the following day. When court reconvened the next morning, McCann's counsel informed the judge that the parties had reached a plea bargain upon the terms he had proposed the day before, which included an indefinite sentence of imprisonment for three to fifteen years.

Except for his failure to mention the right to trial by jury, in all other respects the trial judge personally addressed McCann as required by Crim.R. 11(C). The trial judge also informed McCann of his right to an appeal "if you're convicted at trial," and inquired whether McCann had been promised anything, threatened or coerced, or taken drugs or alcohol, and if he had "clearness of intellect to make the decision." The trial judge, referring to a plea form, also asked McCann if he had discussed it with his counsel and signed it. As the majority points out,

however, the purported document has no probative value since it is not in the record. However, the lead opinion's reliance upon *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766, is misplaced. *Pless* provides only that a court lacks jurisdiction to try a defendant without a jury absent a written jury waiver pursuant to R.C. 2945.05. It has nothing to do with a guilty plea, nor does R.C. 2945.05. A guilty plea is itself a waiver of a trial by jury. *Martin v. Maxwell* (1963), 175 Ohio St. 147, 23 O.O.2d 423, 191 N.E.2d 838.

After the colloquy between the judge and McCann, and the prosecutor's recitation of the facts, the judge entered a finding of guilty. At defense counsel's request, the judge continued the case for sentence and ordered a presentence investigation. Defense counsel then addressed the trial court as follows:

"Judge, I just want to add on the record that Mr. McCann comes before the Court and pleads guilty today. That prior to this hearing, he had maintained his innocence. That I have had extensive negotiations and discussions with him.

"He recognizes the seriousness of the charges. He recognizes the sufficient amount of evidence there is, in fact, available to convict him and it is that primary reason for which he comes before the Court and willingly accepts the plea of guilty.

"We thank you for the opportunity to delay sentencing.

"* * *

"I have explained to him his only right to appeal would be with respect to whether the sentence was lawful. And I have indicated by entering this plea we are withdrawing our motions to suppress, as well as him giving up all other rights which you have discussed."

McCann again acknowledged, when asked by the judge, that he understood his rights, and that he was satisfied with the efforts of his counsel.

By using corrective oversight to vacate McCann's guilty plea in light of this record, the majority ignores the admonition in *Ballard* and "elevate[s] formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused." *Id.*, 66 Ohio St.2d at 480, 20 O.O.3d at 401–402, 423 N.E.2d at 120. This record conclusively demonstrates that McCann exercised a voluntary and intelligent choice with knowledge of the consequences of the guilty plea and the sentence. On balance, the public's broad interest in finality of guilty pleas outweighs McCann's disingenuous claim of coercion. *Id.* at 478, 20 O.O.3d at 400, 423 N.E.2d at 119. Accordingly, I would overrule the first assignment of error.

Having found that McCann was meaningfully informed of the waiver of his *Boykin* rights, I must address McCann's second and third assignments of error.

Before he was sentenced, McCann filed a motion to withdraw his guilty plea with the trial judge. After a hearing, the trial judge overruled the motion. McCann then filed a second motion, which was heard and overruled by the judge who imposed sentence because of the extended unavailability of the first judge. McCann contends that both judges abused their discretion in overruling his presentence motions to withdraw his plea of guilty.

The Ohio Supreme Court observed that, unlike the manifest-injustice standard for post-sentence motions to withdraw a guilty plea, Crim.R. 32.1 provides no guidelines for ruling on a presentence motion to withdraw a guilty plea. *State v. Xie* (1992), 62 Ohio St.3d 521, 525–526, 584 N.E.2d 715, 719. While acknowledging that, pursuant to Crim.R. 32.1, a presentence motion to withdraw a guilty plea should be freely and liberally granted, the court in *Xie* concluded that the right to withdraw the plea is not absolute. The task of the trial court is to determine what circumstances justify "whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* at 527, 584 N.E.2d at 719. The role of an appellate court is not to conduct a *de novo* review of the trial court's decision, but to determine if the judge committed an abuse of discretion. Therefore, the reviewing court must find more than an error of judgment; it must be able to say that the trial court's ruling was "unreasonable, arbitrary, or unconscionable." *Id.* at 527, 584 N.E.2d at 719–720. Without evidence that the trial court acted unfairly or unjustly in refusing to vacate the guilty plea, there can be no abuse of discretion. *Id.* at 526, 584 N.E.2d at 719.

McCann's second assignment of error challenges the order that overruled his first presentence motion to withdraw his guilty plea. His memorandum filed with the judge in support of his motion to withdraw his guilty plea was nonspecific. He asserted only that his plea was not knowingly and voluntarily entered. At the hearing on the motion, the following discussion occurred between the judge and McCann:

"THE COURT: Okay. And so what was not voluntary about it, because I went through that and jumped all the hoops and the whole business. And unless you give me some real good reason, I am not going to grant the motion.

"THE DEFENDANT: Well, your Honor, I just feel that I was kind of pressured into taking the deal.

"THE COURT: By whom? I ask you flat out.

"THE DEFENDANT: Well, by my attorney. My attorney kept telling me it would be the best thing to do. My family and I listened to him, but ever since then I haven't felt at peace with the decision.

"THE COURT: You are saying that you did it voluntarily. You are saying that you did it though, you knew what you were doing, and you didn't have lack of

intelligence or anything, and you are just not comfortable with the decision that you made then?

"THE DEFENDANT: I was just really confused at the time. * * *

"MR. RAPP: * * * I believe that he feels as though my recommendation to him to take the deal may have had too much influence on him and that it was not knowing and voluntarily entered on his own behalf, he was simply doing what he thought I wanted or his family wanted him to do in that respect."

McCann's stated reasons are insufficient in light of *State v. Xie.* They reflect no more than his change of mind. The record does not establish that the trial court abused its discretion in overruling McCann's first motion to withdraw his guilty plea.

McCann's third assignment of error challenges the order overruling his second motion to withdraw his guilty plea. It was filed thirty days after the first hearing and was heard by the judge who imposed the sentence. At this hearing, the prosecutor who negotiated and handled McCann's guilty plea was not present. Counsel told the judge that McCann's family asked him to file the second motion to withdraw McCann's guilty plea because *they* felt it was an injustice because of the first judge's actions. Adopting a different strategy, McCann's counsel told the judge:

"[The judge] came off the bench during a motion to suppress and discussed one-on-one with the family members, stepfather, and Bradley McCann, the benefits of accepting the plea bargain on the record. He spoke with them off the record. He said it was a very good deal. He said, it's very unusual for prosecutors to dismiss a gun spec, for example, with the recommendation being three to fifteen. So the plea was based on that.

"The next day they were calling me, adamant about his innocence, and suggesting they were improperly misled by the Court. And the Court perhaps advocated, rather than being the neutral and detached fact finder * * *."

Neither the memorandum in support of his first motion to withdraw his guilty plea nor the transcript of any hearing supports counsel's representations made to the second judge. The first judge did say, when McCann's counsel first spoke of the plea bargain, "Now he's got you a whale of a deal." The trial judge then advised McCann that the gun specification would increase the length of the sentence. There is no other reference in the record to suggest that the judge discussed a plea bargain.

Although trial judges are cautioned against involvement in the plea-bargain process because of the potential for the accused's perception of coercion, judicial participation is not automatically reversible error. *State v. Byrd* (1980), 63 Ohio St.2d 288, 17 O.O.3d 184, 407 N.E.2d 1384. Here, McCann's newly found

allegations of judicial coercion at the hearing on his second motion to withdraw his guilty plea are, when carefully scrutinized, simply not supported by the record.

McCann's second and third assignments of error, therefore, have no more merit than his first. Accordingly, I would affirm the judgment of the trial court.