This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. The trial court found William L. Schofield, defendant below and appellant herein, guilty of driving a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1) and (4), a fourth degree felony.[2]
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL JUDGE ERRED BY NOT COMPLYING WITH RULE 11(C)(2) OF THE OHIO RULES OF CRIMINAL PROCEDURE."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL JUDGE ERRED BY FAILING TO COMPLY WITH RULE 23(A) OF THE OHIO RULES OF CRIMINAL PROCEDURE AND OHIO REVISED CODE SECTION 2945.05."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COUNSEL FOR THE DEFENDANT WAS INEFFECTIVE IN HIS REPRESENTATION OF THE DEFENDANT TO THE DEFENDANT'S DETRIMENT."
FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN NOT PROPERLY SENTENCING THE DEFENDANT."
On October 16, 1998, the Washington County Grand Jury returned an indictment charging appellant with one count of operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1) and (4), and one count of furnishing false information to avoid citation, in violation of R.C. 4513.361. At his arraignment, appellant entered a not guilty plea.
On November 25, 1998, at a change of plea hearing, appellant advised the trial court that he wished to change his plea to guilty. Prior to accepting appellant's plea, the trial court conducted the following colloquy with appellant:
 THE COURT: Okay. Mr. Schofield, we're going to engage in a dialogue. It's important that you understand the nature of these proceedings. There's many things I have to explain to you twice by law, some things I have to explain three times.
 If at any time you have any questions, do not hesitate to stop the proceedings and say, "Judge, I want to talk to my lawyer." We can do that. If you want to confer privately, we can make arrangements to have that done in the attorney conference room across the hall. But this is a serious offense and it is important that you have a full understanding of these proceedings.
 Now, the penalty for this offense is a fine of a minimum of $750, a maximum of $10,000; a minimum of sixty days incarceration and a maximum of eighteen months incarceration; a minimum of a three-year driver's license suspension to a maximum of a lifetime driver's license suspension. You will be required to attend school and a drug addiction program, which you will have to pay the costs unless you're declared to be indigent, and the vehicle that you were driving will be forfeited to the State.
* * * *
 THE COURT: Okay. Do you understand that, Mr. Schofield?
* * * *
THE DEFENDANT: Yes.
 THE COURT: * * * The elements of this offense, and what the State must prove, beyond a reasonable doubt, in order to obtain a conviction at trial, are that on or about September 4th, 1998, and in Washington County, Ohio, you did operate any vehicle within this state and that you were under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, and you had a concentration of .14ths of one gram or more by weight of alcohol per 100 * * * milliliters of your urine, and that you have prior convictions, and within the last six years, you've pled--been convicted of or pled guilty to three of more violations of 4511.19(A)(1) or (A)(b) [sic] or a municipal ordinance relating to the operating of a motor vehicle while under the influence of alcohol or drug of abuse, or both, or municipal ordinance or a state statute of another state that is of the United States that is of substantially similar to the Ohio statute in its--or you've operated with a prohibition--prohibited concentration of alcohol in your--in your urine prior to this time, blood or breath. * * *
 Now, Attorney Carson, have you fully investigated the facts and the law and determined whether there exists any question of the admissibility of any claims, admissions, confession or other evidence under federal and state law and advised Mr. Schofield accordingly?
MR. CARSON: Yes, I have, your Honor.
 THE COURT: Okay. And have you informed him of the elements of the offense with which he's charged, of all defenses that may be available to him, and of all his constitutional rights, both state and federal?
* * * *
 THE COURT: Okay. Mr. Schofield, you have a constitutional privilege against self incrimination and the right to remain silent today. Everything that is said in this courtroom is recorded. The tapes are kept as a permanent part of this record. Anything you say from this point on can be used against you later in this case, and other cases, and you don't have to offer any information that makes you look guilty. Do you understand that?
THE DEFENDANT: Yes, I do, your Honor.
 THE COURT: Okay. With the full understanding that anything you say may be used against you, are you willing to give up your privilege against self incrimination and tell the truth concerning this charge against you?
THE DEFENDANT: I do.
 THE COURT: Okay. Did you hear the questions I just asked Attorney Carson?
THE DEFENDANT: Yes, I did.
 THE COURT: Do you personally acknowledge that he has informed you and advised you on the matters I asked him about?
THE DEFENDANT: I do.
 THE COURT: Okay. Has he answered all of your questions?
THE DEFENDANT: He has.
 THE COURT: Are you satisfied with his advice and his services?
THE DEFENDANT: I am.
 THE COURT: Okay. Do you understand the nature of the charge, the elements and the penalty provisions as I've explained them to you?
THE DEFENDANT: I do.
* * * *
 THE COURT: * * * Now, before you enter a plea, I have to inquire again as to certain matters. Do you understand the nature of this offense is driving while under the influence of drugs or alcohol, a fourth degree felony * * *. Do you understand that, sir?
THE DEFENDANT: I do.
 THE COURT: Okay. Do you understand that the maximum penalty is eighteen months in jail, a lifetime driving suspension, a $10,000 fine and a requirement that you attend an alcohol and drug addiction program at your expense, unless you are found to be indigent, and the forfeiture of this vehicle to the State of Ohio? Do you understand that?
THE DEFENDANT: I do. * * *
The trial court further inquired whether anyone had forced appellant to plead guilty. Appellant stated that no one had forced him to plead guilty. The court advised appellant:
 "If anybody has promised, made any promises or inducements to you, other than what these lawyers have said in court today, to get you to plead guilty, they're not binding upon me. If you plead guilty, I, and I alone, will decide your sentence. I will consider all the factors in [Chapter 2929] * * *. I will have a pre-sentence investigation report and the recommendation of the probation department. But you very well may receive the maximum sentence prescribed by law. Do you understand that?"
The defendant stated that he understood.
With respect to the effect that appellant's guilty plea would have on his right to a jury trial, the court explained as follows:
 THE COURT: * * * Now, very shortly I'm going to ask you how you plead. If, at that time, you say you plead guilty, you've given up several rights. I have to explain them individually and then I have to explain them to you a second time. But, Mr. Schofield, if you say, "Judge, I'm guilty," at that point in time, you've given up your right to either have a jury trial or a court trial. There would never be a trial in this case.
Do you understand that?
THE DEFENDANT: Yes, I do.
(Emphasis added.)
The court further advised appellant that by pleading guilty, he would waive certain constitutional rights that he otherwise would be entitled to at a trial.
 THE COURT: Okay. If you plead guilty, you give up your right to confront your accusers. What that means is, you'll never sit in this courtroom, nor any other courtroom, and look at the people in the witness stand and listen to their testimony, those that are pointing the finger at you, saying you broke this law. That won't happen. Do you understand that?
THE DEFENDANT: Yes, I do.
 THE COURT: Okay. If you plead guilty, you give up your right to cross-examine the witnesses that would testify against you. Neither Attorney Carson, you, nor any other lawyer on your behalf, will ever have the chance to question those witnesses against you under oath in a court of law. Do you understand that?
THE DEFENDANT: I do.
 THE COURT: Okay. If you plead guilty, you give up your own right to take the witness stand and testify in your own behalf. You cannot be made to testify against yourself. And if you choose to remain silent at trial, in the strongest terms I know how, I'll instruct the jury not to consider the fact that you chose to remain silent. But the point is, you'll never be given the choice, do you want to testify or do you not want to testify. Do you understand that?
THE DEFENDANT: I do.
 THE COURT: If you plead guilty, you give up the right to have the Court issue subpoenas to make people come before it and testify for you. Do you understand that?
THE DEFENDANT: I do.
 THE COURT: Okay. Most importantly, if you plead guilty, you will no longer be presumed innocent until proven guilty beyond a reasonable doubt. You will, in fact, become a convicted felon. Do you understand that?
THE DEFENDANT: I do.
 THE COURT: Okay. I have to sum this up. Do you understand that if you plead guilty, and I accept your guilty plea, that you will have given up your right to be presumed innocent until proven guilty beyond a reasonable doubt, your right to confront and question the witnesses against you, your right to have subpoenas issued to obtain witnesses in your favor, your right to remain silent or your right to testify at trial, as you would choose to do, and no inference could be drawn if you chose not to testify at trial? Do you understand all of that?
THE DEFENDANT: I do.
* * * *
 THE COURT: * * * Do you want a trial by a court, a jury, or do you want the Court to allow you to plead guilty to this charge?
 THE DEFENDANT: I want to plead guilty to this charge.
On December 7, 1998, the trial court accepted appellant's guilty plea. Pursuant to the plea agreement, the trial court dismissed count two of the indictment.
On January 20, 1999, the trial court sentenced appellant to three years of community control with, inter alia, the following specifications: (1) appellant serve 365 days in the Washington County Jail; and (2) after his 365 days in jail, appellant must enter the SEPTA Center.
Appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant asserts that the trial court erred by accepting appellant's guilty plea without complying with Crim.R. 11(C)(2). In particular, appellant claims that the trial court, prior to accepting appellant's guilty plea, failed to ensure that appellant knowingly, voluntarily, and intelligently waived his right to jury trial. The state asserts that the trial court sufficiently apprised appellant of his right to a jury trial and adequately ascertained that appellant knowingly, intelligently, and voluntarily waived that right.
Generally, a guilty plea constitutes a complete admission of guilt and operates as a waiver of all non-jurisdictional defects in the proceedings. See Crim.R. 11(B)(1); see, e.g.,United States v. Broce (1989), 488 U.S. 563, 109 S.Ct. 757,102 L.Ed.2d 92,; Menna v. New York (1975), 423 U.S. 61,96 S.Ct. 241, 46 L.Ed.2d 195. A guilty plea does not, however, preclude a defendant from challenging the trial court's determination that he or she knowingly, intelligently, and voluntarily entered the plea. As the court explained in State v. Engle (1996), 74 Ohio St.3d 525,527, 660 N.E.2d 450, 451:
 "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution. Mabry v. Johnson (1984), 467 U.S. 504, 508-509, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437, 443; Boykin v. Alabama (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; Kercheval v. United States
(1927), 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012; State v. Kelley (1991), 57 Ohio St.3d 127, 566 N.E.2d 658; Crim.R. 11(C)".
In considering whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, an appellate court must review the record to ensure that the trial court complied with the constitutional and procedural safeguards contained within Crim.R. 11. State v. Kelley (1991), 57 Ohio St.3d 127,128, 566 N.E.2d 658, 659 ("When a trial court or appellate court is reviewing a plea submitted by a defendant, its focus should be on whether the dictates of Crim.R. 11 have been followed."); see, also, State v. Carter (1979), 60 Ohio St.2d 34,396 N.E.2d 757.
Pursuant to Crim.R. 11(C)(2), the trial court shall not accept a guilty plea without first addressing the defendant personally and:
 (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
Thus, the trial court must explain the constitutional rights encompassed within Crim.R. 11(C)(2)(c) that the defendant waives by entering a guilty plea. "[T]he trial court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to a jury trial, his right to confront his accusers, and his right of compulsory process of witnesses." State v. Ballard (1981), 66 Ohio St.2d 473,423 N.E.2d 115, paragraph one of the syllabus; see, also, Boykin v.Alabama (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274;Kelley, 57 Ohio St.3d at 129, 566 N.E.2d at 660.
The purpose of Crim.R. 11(C) is "to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty." Ballard,66 Ohio St.2d at 479-80, 423 N.E.2d at 119. Thus, the trial court need not recite the exact language of Crim.R. 11(C) when informing a criminal defendant of his or her constitutional rights. Rather, a trial court's acceptance of a guilty plea will be affirmed if the record reveals that the trial court engaged in a meaningful dialogue with the defendant and explained, "in a manner reasonably intelligible to that defendant," the constitutional rights the defendant waives by pleading guilty. Ballard,
paragraph two of the syllabus.
To warrant a reversal of the trial court's entry of conviction on a guilty plea, the defendant must establish that the trial court failed to comply with Crim.R. 11(C), and that the court's failure caused the defendant actual prejudice. See State v.Jodziewicz (Apr. 16, 1999), Adams App. No. 98 CA 667, unreported (citing State v. Nero (1990), 56 Ohio St.3d 106, 564 N.E.2d 474). To demonstrate that he or she suffered actual prejudice as a result of the court's failure to comply with Crim.R. 11(C), the defendant must illustrate that he or she would not have pled guilty but for the trial court's failure. Nero,56 Ohio St.3d at 108, 564 N.E.2d at 476 (stating that "[t]he test is whether the plea would have otherwise been made")
In the case at bar, our review of the record reveals that the trial court fully complied with both the constitutional and non-constitutional provisions of Crim.R. 11. The trial court ascertained that appellant understood the crime to which he was pleading guilty and the corresponding penalty. The trial court advised appellant that his guilty plea would constitute a complete admission of guilt and that upon acceptance of his plea, the court could proceed with sentencing. The trial court further questioned whether appellant had been induced, forced, or threatened to plead guilty, and whether anyone had promised appellant anything in return for his guilty plea. Additionally, the court aptly explained that by pleading guilty appellant waived his right to confront witnesses, his right to compulsory process, his right to require the state to prove his guilt beyond a reasonable doubt, and his right against self-incrimination.
Moreover, contrary to appellant's argument in the case subjudice, the court informed appellant of his right to a jury trial in a reasonably intelligible manner. While the preferred course would have been for the trial judge to explicitly explain "by pleading guilty you are waiving your right to a jury trial," use of this exact language is not necessary. See, e.g., Ballard,66 Ohio St. 2d at 479, 423 N.E.2d at 119. We believe that the record fully demonstrates that the trial court advised appellant of his right to a trial by jury and the implications that his guilty plea would have on that right. The trial court explained that if appellant pled guilty, "there would never be a trial." After explaining appellant's rights to compulsory process, right against self-incrimination, and right to confront accusers, the court asked appellant, prior to accepting his plea, whether he wanted a trial by the court, a trial by the jury, or to plead guilty. Appellant responded that he wished to plead guilty.
We find the case appellant cites, State v. McCann (1997),120 Ohio App.3d 505, 698 N.E.2d 470, inapposite. In McCann, the court concluded that the defendant had not knowingly, voluntarily, and intelligently entered his guilty plea when the record disclosed that the trial court utterly failed to mention that by pleading guilty, the defendant waived his right to a jury trial. Unlike the situation in McCann, in which the trial court completely failed to mention the right to a jury trial, in the case at bar the trial court discussed appellant's right to a jury trial.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant asserts that the trial court erred by accepting appellant's guilty plea without first obtaining a written waiver of appellant's right to a jury trial. Appellant contends that Crim.R. 23(A) and R.C. 2945.05
require a trial court, prior to accepting a guilty plea, to obtain a criminal defendant's written waiver of his right to a jury trial.
The state asserts that Crim.R. 23(A) and R.C. 2945.05 do not apply when accepting a guilty plea. The state contends that the provisions apply when a criminal defendant chooses to proceed to a trial without a jury, and not when a criminal defendant chooses to forego a trial altogether by pleading guilty. We find merit to the state's argument.
Crim.R. 23(A) provides:
 Trial by jury. In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney. In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto.
R.C. 2945.05 provides:
 In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows:
 "I . . . . . . . ., defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."
 Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.
If a criminal defendant chooses to forego a jury trial and elects to be tried before the court, the trial court must strictly comply with the foregoing procedures prior to conducting a trial. See State v. Pless (1996), 74 Ohio St.3d 333,658 N.E.2d 766.
The provisions of Crim.R. 23(A) and R.C. 2945.05 do not apply, however, when a defendant elects to plead guilty. In Martin v.Maxwell (1963), 175 Ohio St. 147, 147, 191 N.E.2d 838, the court stated: "The provisions of Section 2945.05, Revised Code, requiring the filing of a written waiver of a trial by jury are not applicable where a plea of guilty is entered by an accused." See, also, State v. West (June 11, 1999), Hamilton App. No. C-980189, unreported; State v. Hawkins (Apr. 9, 1999), Greene App. No. 98 CA 6, unreported; State v. Lee (Mar. 19, 1999), Williams App. No. WM-98-015, unreported; State v. Childress (July 23, 1998), Cuyahoga App. No. 71956, unreported; State v. Beckford
(Dec. 23, 1996), Washington App. Nos. 95 CA 5 and 96 CA 2, unreported.
As explained in Katz and Gianelli, Criminal Law (1998), 392, Section 62.12:
 "The entry of a plea of guilty by an accused constitutes a waiver of jury trial. Prior to accepting a guilty plea, however, the trial court must inform the defendant of the waiver of this right, and the record must show that the court explained these rights to the defendant.
 A written jury waiver is not required before a guilty plea may be accepted. Thus, an oral waiver is sufficient. R.C. 2945.05 and Criminal Rule 23(A)'s written waiver requirement is designed to apply to those cases where the accused waives a jury trial and elects a bench trial. As the Ohio Supreme Court noted in Martin v. Maxwell [(1963), 175 Ohio St. 147, 191 N.E.2d 838, `The provisions of Section 2945.05, Revised Code, requiring the filing of a written waiver of a trial by jury are not applicable where a plea of guilty is entered by an accused.' * * *
(footnotes omitted). See, also, State v. Pless (1996), 74 Ohio St.3d 333, 658 N.E.2d 766, in which the Ohio Supreme Court held that absent strict compliance with the R.C. 2945.05 requirements, a trial court lacks jurisdiction to try the defendant without a jury.
Thus, in the case at bar, because appellant chose to plead guilty, we conclude that the requirements for a written waiver of the right to a jury trial as set forth in R.C. 2945.05 and Crim.R. 23(A) are inapplicable.[3]
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III
In his third assignment of error, appellant asserts that he received ineffective assistance of trial counsel. Specifically, appellant argues that his trial counsel rendered ineffective assistance by permitting appellant to enter a guilty plea without first having a urine analysis performed. Appellant further asserts that trial counsel's performance was ineffective because his counsel failed to ensure that the state placed its sentencing recommendation on the record. Appellant claims that the state advised him that it would recommend "that he serve a total of nine months which would include sixty (60) days of county jail time, plus six months in the SEPTA center in addition to the time already served." Finally, appellant claims that his trial counsel was ineffective for failing to object to the trial court's "sentencing policies."
In the context of a guilty plea, to establish that defense counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution, the defendant must demonstrate that: (1) counsel's performance was deficient; and (2) a reasonable probability exists that but for counsel's deficient performance, the defendant would have chosen to proceed to trial. See Hill v. Lockhart (1985), 474 U.S. 52,59, 106 S.Ct. 366, 88 L.Ed.2d 203; Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; Statev. Xie (1992), 62 Ohio St.3d 521, 524, 584 N.E.2d 715, 717. As the court explained in United States v. Broce (1989),488 U.S. 563, 674, 109 S.Ct. 757, 102 L.Ed.2d 927: "A failure by counsel to provide advice (which impairs the knowing and voluntary nature of the plea) may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve the predicate for setting aside a valid plea."
When addressing an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. See State v. Phillips
(1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643, 658 (stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made) Rather, the reviewing court "must be highly deferential." Strickland,466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. As the Strickland
Court stated, a reviewing court:
 "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.
Id.; see, also, State v. Sallie (1998), 81 Ohio St.3d 673,674-75, 693 N.E.2d 267, 269; State v. Carter (1995), 72 Ohio St.3d 545,558, 651 N.E.2d 965, 977.
In the case at bar, appellant has failed to demonstrate either that: (1) trial counsel's performance was deficient; or (2) that trial counsel's allegedly deficient performance caused him to enter a guilty plea that he otherwise would not have entered.
First, we disagree with appellant that trial counsel performed deficiently by permitting appellant to plead guilty without having an analysis of the urine sample completed. The record of the change of plea hearing clearly reveals that trial counsel had discussed the issue with appellant and that appellant chose to forego having the analysis performed. Appellant's trial counsel informed the court: "[Appellant is] aware that the Court has approved an expert, if we were to proceed further, to analyze the urine test, and he would enter the plea even though that there [sic] could be some additional investigation yet to be completed." Appellant indicated that he agreed with trial counsel's statement. Moreover, appellant fails to explain how foreknowledge of the urine analysis would have affected his decision to plead guilty. See State v. Mack (Oct. 29, 1998), Allen App. No. 1-98-30, unreported (stating that the defendant failed to point "to any specific facts that tend to demonstrate a `reasonable probability' that his decision to plead guilty would have been affected by" further discovery). Appellant has not claimed that a reasonable probability exists that had he known the results of the urine analysis prior to pleading guilty, he would have chosen to proceed to trial.
Second, we find nothing in the record to illustrate that trial counsel failed to ensure that the plea agreement was stated on the record. In fact, the record demonstrates that defense counsel and appellant expressed satisfaction with the plea agreement as recited by the state. When the trial court inquired whether a plea agreement existed, the state responded: "The only plea agreement is that we are dismissing Count II of this indictment, and specifically there are other charges pending in the Marietta Municipal Court, and this agreement has nothing to do with those." Appellant's trial counsel agreed with the state's representation of the plea agreement, with the following addition: "The only additional thing is * * * [the prosecutor and defense counsel] agreed that it is our position that this sentence and any municipal court sentence, by statute, are concurrent sentences." Appellant stated that he agreed with the attorneys' statements regarding the plea agreement. Nothing exists in the record to demonstrate that any additional conditions were attached to the plea agreement.[4] We find no deficiency in counsel's performance.
Finally, we find no merit to appellant's argument that trial counsel rendered deficient performance by failing to object to the trial court's sentence. Appellant has not specified how counsel's allegedly deficient performance negatively impacted his ability to enter a knowing, voluntary, and intelligent guilty plea. Moreover, as discussed under appellant's fourth assignment of error, we find no error with the trial court's sentence.
Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.
 IV
In his fourth assignment of error, appellant argues that the trial court erred by sentencing him contrary to the revised code. In particular, appellant complains that the trial court improperly sentenced him to one year in county jail. The state contends that the trial court's sentence fell within the statutory limits and that the trial court did not abuse its discretion.
When reviewing a trial court's decision regarding sentencing, a reviewing court may not modify or vacate the sentence unless the court "clearly and convincingly" finds that: (1) the sentence is not supported by the record; (2) the trial court imposed a prison term without following the appropriate statutory procedures; or (3) the sentence imposed was contrary to law. R.C. 2953.08(G); Griffin Katz, Ohio Felony Sentencing Law (1998 Ed.) 495, Section 9.16.
Although a trial court generally possesses discretion when sentencing an offender, a trial court must not disregard the statutory principles, procedures, presumptions, and factors. See R.C. 2929.12(A); State v. Persons (Apr. 26, 1999), Washington App. No. 98 CA 19, unreported; State v. McConnaughey (Mar. 4, 1998), Athens App. No. 97 CA 39, unreported; State v. Thomas (May 18, 1998), Washington App. No. 97 CA 20, unreported; State v.Ditterline (Sep. 5, 1997), Washington App. No. 96 CA 47, unreported. As noted in Persons, an appellate court's review of a trial court's decision regarding sentencing is no longer conducted pursuant to the traditional "abuse of discretion standard. See Griffin Katz 495, Section 9.16 ("[J]udicial discretion is now greatly circumscribed. The sentencing act provisions significantly limit and channel the exercise of discretion through statutory guidelines in the form of purposes, principles, factors, and presumptions."). Rather, by providing statutory standards for the exercise of discretion, the Ohio General Assembly has now clearly defined that which constitutes an "abuse of discretion." See Person, supra, n. 3 (citing Griffin Katz 495, Section 9.16). A sentencing court abuses its discretion when the court fails to appropriately consider the "purposes, array of principles, factors, and presumptions, " detailed throughout R.C. 2929.11 through R.C. 2929.20. Griffin 
Katz 495, Section 9.16; see, also, Persons, supra. Thus, in determining whether the sentencing court properly exercised its discretion, a reviewing court should examine the record to ascertain whether the trial court: (1) considered the statutory factors; (2) made the required findings; (3) relied on substantial evidence in the record to support its findings; and (4) properly applied the statutory guidelines. State v. Dunwoody
(Aug. 5, 1998), Meigs App. No. 97 CA 11, unreported.
We further note that our standard of review does not permit us to substitute our judgment for that of the trial court. Griffin 
Katz 496, Section 9.16. Neither may we completely defer to the trial court's decision. Id. Instead, we must examine the record to ascertain whether "substantial evidence" exists in the record "to support the trial court's conclusions and the sentence it imposed." Id.
We begin by noting that appellant pled guilty to operating a motor vehicle while under the influence of alcohol, a fourth degree felony. Because the revised code treats, for sentencing purposes, a fourth degree felony OMVI offense differently than other ordinary fourth degree felony offenses, we begin with the statute specifically setting forth the penalty provisions for a fourth degree felony offense, R.C. 4511.99(A)(4)(a).
R.C. 4511.99(A)(4)(a) provides that a fourth degree felony OMVI offender shall be sentenced as follows:
 * * * * The court shall sentence the offender in accordance with sections 2929.11 to 2929.19 of the Revised Code and shall impose as Part of the sentence a mandatory term of local incarceration of sixty consecutive days of imprisonment in accordance with division (G)(1) of section 2929.13 of the Revised Code or a mandatory prison term of sixty consecutive days of imprisonment in accordance with division (G)(2) of that section, whichever is applicable. If the offender is required to serve a mandatory term of local incarceration of sixty consecutive days of imprisonment in accordance with division (G)(1) of section 2929.13 of the Revised Code, the court, pursuant to section 2929.17 of the Revised Code, may impose upon the offender a sentence that includes a term of electronically monitored house arrest, provided that the term of electronically monitored house arrest shall not commence until after the offender has served the mandatory term of local incarceration.
 In addition to all other sanctions imposed, the court shall impose upon the offender, pursuant to section 2929.18 of the Revised Code, a fine of not less than seven hundred fifty nor more than ten thousand dollars.
 In addition to any other sanction that it imposes upon the offender, the court shall require the offender to attend an alcohol and drug addiction [program].
Thus, a trial court must sentence a first-time fourth degree felony OMVI offender[5] to a minimum jail term of sixty days of local incarceration. Additionally, the court must impose a fine of at least $750, but not more than $10,000. The court also must require the offender to attend an alcohol and drug addiction program. Moreover, the trial court must follow not only the mandates contained within R.C. 4511.99(A)(4), but also must consider the statutory principles, procedures, presumptions, and factors outline throughout R.C. 2929.11 to 2929.19.
R.C. 2929.13(G) specifies the conditions with which the trial court must comply when imposing upon a first-time fourth degree felony OMVI offender the mandatory sixty days of local incarceration. The statute provides that the court "shall specify whether the term is to be served ma jail, a community-based correctional facility, a halfway house, or an alternative residential facility, and the offender shall serve the term in the type of facility specified by the court." The statute prohibits the court from imposing a prison term upon a first-time fourth degree felony OMVI offender.
Certain other provisions throughout R.C. 2929.11 to 2929.19
specifically govern the sentencing of a fourth degree felony OMVI offender. R.C. 2929.13(A)(1)[6] permits a trial court to impose upon a first-time fourth degree felony OMVI offender a community control sanction or a combination of community control sanction, in addition to the mandatory sixty days of local incarceration.
R.C. 2929.15(A)(1),[7] like R.C. 2929.13(A)(1), explicitly permits a trial court to impose upon a first-time fourth degree felony OMVI offender a community control sanction or a combination of community control sanctions, in addition to the mandatory sixty days of local incarceration.[8] The statute further specifies that the trial court shall not impose a community control sanction or a combination of community control sanctions in excess of five years.
R.C. 2929.16(A)[9] specifies that a first-time fourth degree felony OMVI offender first must serve the sixty days of local incarceration prior to complying with the court-imposed community control sanctions. The statute further defines the community control sanctions, or combination thereof, that the court may impose upon a first-time fourth degree felony OMVI offender: (1) a term of up to six months at a community-based correctional facility; (2) a term of up to six months in jail; (3) a term of up to one year in jail less the mandatory sixty days of local incarceration; (4) a term in a halfway house; and (5) a term in an alternative residential facility.
In sum, the above statutes empowered the trial court in the instant case to sentence appellant, inter alia, as follows: (1) to a "mandatory term of local incarceration of sixty days; (2) "up to one year in jail"; and (3) to a community control sanction or to a combination of community control sanctions, but not in excess of five years. See R.C. 4511.99(A)(4); R.C. 2929.16; R.C.2929.15(A)(1).
In the case at bar, the trial court sentenced appellant to three years of community control, including one year in county jail and a term in SEPTA, a community based correctional facility.[10] Appellant complains, however, that the trial court improperly sentenced him by failing to mention that appellant was to serve a mandatory term of sixty days of local incarceration.[11] We find no merit to appellant's argument. We do not believe that failure to specify that the offender serve a mandatory term of sixty days of local incarceration, then specify that the offender serve, as part of the community control sanctions, one year in county jail less the mandatory term of sixty days, renders the sentence contrary to law. We cannot agree that simply because the trial court failed to use the words, "mandatory term of sixty days of local incarceration", in its sentencing entry, that the court's sentence is somehow improper. See State v. Kendrick (Nov. 16, 1998), Butler App. No. CA98-05-092, unreported.[12] The trial court in the instant case did not impose a sentence in excess of the sentence permitted by the revised code. Although the court may not have been as specific as it could have been, we nonetheless believe that the court achieved the appropriate result. Of course, courts would be well-advised to comply with the language of the statute regarding the mandatory term of local incarceration. The better practice would have been for the trial court to explicitly state in its sentencing entry that: (1) the defendant serve a mandatory term of sixty days of local incarceration and, (2) as part of the defendant's community control sanctions, the defendant shall serve one year in the county jail less the mandatory term of sixty days of local incarceration.
Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment Opinion.
For the Court
BY: Peter B. Abele, Judge.
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[2] R.C. 4511.99(A)(4)(a) provides that a defendant's fourth R.C. 4511.19(A) offense within six years constitutes a fourth degree felony.
[3] Appellant asserts that in State v. McCann (1997), 120 Ohio App.3d 505, 698 N.E.2d 470, the Hamilton County Court of Appeals held, inter alia, citing Pless, supra, that the absence of a written jury trial waiver requires a reversal of a judgment of conviction and sentence, even if the conviction resulted from a guilty plea rather than a trial. In McCann, the defendant pleaded guilty to a robbery charge.
Although appellant correctly cited the language appearing in the principal opinion in McCann, for several reasons we find the language in McCann on this particular point to be of little value.
First, as we point out above, caselaw issued by the Ohio Supreme Court and various Ohio appellate courts, including the Fourth Appellate District, hold that a written jury waiver is not required before a court may accept a guilty plea. Second, this court is not bound by decisions issued by other Ohio appellate courts. See. S.Ct.R.Rep.Op. 2(E)(4). Third, we note that the McCann court was sharply divided and that the jury trial waiver issue does not appear to have gained support in the concurring judge's opinion. Rather, the concurring opinion focuses on the adequacy of the trial court's Crim.R. 11 explanation and a discussion of the defendant's constitutional rights prior to the trial court accepting the defendant's guilty plea. The concurring opinion mentions the written jury trial waiver issue merely as a factor that supports the conclusion that the trial court failed to comply with the Crim.R. 11 requirements. Lastly, it appears that McCann enjoys very limited value even within the First Appellate District. Recently, in State v. West (June 11, 1999), Hamilton App. No. C-980189, unreported, the Hamilton County Court of Appeals held, citing Martin v. Maxwell (1963), 175 Ohio St. 147, 191 N.E.2d 838, that a guilty plea constitutes a waiver of a jury trial. The West court rejected the argument that a trial court must, prior to accepting a guilty plea, obtain a written jury trial waiver. We note that the Hamilton County Court of Appeals decided West after the appellant in the instant case submitted his appellate brief.
Thus, in view of the foregoing reasons, we decline the invitation to follow the McCann decision.
[4] We note that appellant's claim that the state promised appellant a lighter sentence than that which he received finds no support in the record. To the extent that appellant's claim raises matters outside the record, a petition for postconviction relief is the proper procedural device for raising such a claim. See, generally, State v. Nichols (1984), 11 Ohio St.3d 40, 42,463 N.E.2d 375, 377 (citing State v. Gibson (1980), 69 Ohio App.2d 91,95, 430 N.E.2d 954, 957 (stating that postconviction relief provides the appropriate remedy when referring to mattersdehors the record); State v. Young (Dec. 18, 1997), Cuyahoga App. No. 71977, unreported.
[5] The term "first-time fourth degree felony OMVI offender" is used to distinguish the offender from one who previously had been convicted of a fourth degree felony OMVI offense. A fourth degree felony OMVI offender faces a mandatory prison term, as opposed to term of local incarceration. See R.C. 2929.13(G)(2).
[6] R.C. 2929.13(A)(1) provides:
 "Except as provided in division (E), (F), or (G) of this section and unless a specific sanction is required to be imposed or is precluded from being imposed pursuant to law, a court that imposes a sentence upon an offender for a felony may impose any sanction or combination of sanctions on the offender that are provided in sections 2929.14 to 2929.18 of the Revised Code. * * *.
* * * * *
 If the offender is being sentenced for a fourth degree felony OMVI offense, in addition to the mandatory term of local incarceration or the mandatory prison term required for the offense by division (G)(1) or (2) of this section, the court shall impose upon the offender a mandatory fine in accordance with division (B)(3) of section 2929.18 of the Revised Code and may impose whichever of the following is applicable:
 (1) If division (G)(1) of this section requires that the offender be sentenced to a mandatory term of local incarceration, an additional community control sanction or combination of community control sanctions under section 2929.16 or 2929.17 of the Revised Code.
 (2) If division (G)(2) of this section requires that the offender be sentenced to a mandatory prison term, an additional prison term as described in division (D)(4) of section 2929.14 of the Revised Code.
[7] R.C. 2929.15 (A)(1) provides:
 "If in sentencing an offender for a felony the court is not required to impose a prison term, a mandatory prison term, or a term of life imprisonment upon the offender, the court may directly impose a sentence that consists of one or more community control sanctions authorized pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code. If the court is sentencing an offender for a fourth degree felony OMVI offense and if it is required to impose on the offender a mandatory term of local incarceration pursuant to division (G)(1) of section 2929.13 of the Revised Code, in addition to the mandatory term of local incarceration and the mandatory fine required by division (B)(3) of section 2929.18 of the Revised Code, the court may impose upon the offender a community control sanction or combination of community control sanctions in accordance with sections 2929.16 and 2929.17 of the Revised Code. The duration of all community control sanctions imposed upon an offender shall not exceed five years.
[8] R.C. 2929.19(C)(1) also grants a trial court authority to impose upon a first-time fourth degree felony OMVI offender community control sanctions or a combination of community control sanctions. The statue provides:
 If the offender is being sentenced for a fourth degree felony OMVI offense and if the court is required by division (G)(1) of section 2929.13 of the Revised Code to impose as a sanction a mandatory term of local incarceration, the court * * * may impose additional sanctions as specified in sections 2929.15, 2929.16, 2929.17, and 2929.18 of the Revised Code. The court shall not impose a prison term on the offender.
[9] R.C. 2929.16(A) provides:
 The court imposing a sentence for a felony upon an offender who is not required to serve a mandatory prison term may impose any community residential sanction or combination of community residential sanctions under this section. The court imposing a sentence for a fourth degree felony OMVI offense upon an offender who is required to serve a mandatory term of local incarceration Pursuant to division (G)(1) of section 2929.13 of the Revised Code may impose upon the offender, in addition to the mandatory term of local incarceration, a community residential sanction or combination of community residential sanctions under this section, and the offender shall serve or satisfy the sanction or combination of sanctions after the offender has served the mandatory term of local incarceration required for the offense. Community residential sanctions include, but are not limited to, the following:
 (1) A term of up to six months at a community-based correctional facility that serves the county;
 (2) Except as otherwise provided in division (A)(3) of this section and subject to division (D) of this section, a term of up to six months in jail;
 (3) If the offender is convicted of a fourth degree felony OMVI offense and is sentenced Pursuant to division (G)(1) of section 2929.13 of the Revised Code, subject to division (D) of this section, a term of up to one year in a jail less the mandatory term of local incarceration of sixty consecutive days of imprisonment imposed Pursuant to that division;
(4) A term in a halfway house;
(5) A term in an alternative residential facility.
(Emphases added.)
[10] In State v. Flynn (Mar. 28, 1997), Meigs App. No. 96 CA 10, unreported, we concluded that SEPTA is a community-based correctional facility, as contemplated by R.C. 2967.191.
[11] Although appellant did not raise an issue in the instant appeal regarding the length of his jail sentence (i.e. imprisonment for one year followed by a community control sanction which includes the completion of the SEPTA program) and whether his sentence may in fact exceed the one year maximum jail sentence prescribed by the Ohio Revised Code, we believe that the parties and the trial court may wish to revisit this issue. See, e.g. State v. Ferguson (Aug. 19, 1999), Pickaway App. No. 99CA6, unreported; R.C. 2929.13(G)(1); R.C. 2929.16(A)(3); R.C.4511.99(A)(4)(a).
[12] In Kendrick, the trial court sentenced the defendant, a first-time fourth degree felony OMVI offender, to one year in the county jail without referring to the mandatory sixty days of local incarceration. On appeal, the court concluded that the trial court's sentence for the OMVI offense was not contrary to law.
Appellant, in his reply brief, notes that the Kendrick court reversed the defendant's sentence and remanded to the trial court for proper sentencing. Upon our reading of Kendrick, however, it appears that the court found the defendant's sentence on a separate count, receiving stolen property, improper. In addressing the defendant's claim that his sentence for the OMVI offense was improper, the court stated: "[F]rom the face of the conviction entry, the trial court did not impose a sentence in excess of that provided by law with respect to [the OMVI offense]."