The STATE of Ohio, Appellee,

v.

LOPEZ, Appellant.

[Cite as State v. Lopez, 166 Ohio App.3d 337, 2006-Ohio-2091.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050088.

Decided April 28, 2006.

338

340

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Myron Y. Davis Jr., for appellant.

DOAN, Presiding Judge.

{¶ 1} Defendant-appellant, Ronnie Lopez, appeals convictions for possession of marijuana under R.C. 2925.11 and trafficking in marijuana under R.C. 2925.03. The record shows that Lopez entered a no-contest plea after the denial of his motion to suppress evidence. The trial court accepted the plea and found Lopez guilty based on the facts presented by the state. We affirm the convictions.

{¶ 2} The evidence presented at the suppression hearing showed that on March 11, 2003, Sergeant Gregory Morgan of the Regional Enforcement Narcotics Unit ("RENU") was patrolling Interstate 74 just east of the Indiana border. The purpose of his patrol was to help stop drug trafficking on the highway. Agents Thomas Canada, Christopher Arnold, and Rob Shircliff, who were all in uniform and driving marked police cars, were assisting Morgan that day.

{¶ 3} Morgan observed a gray Chevrolet Impala in the high-speed lane following a Budget rental van so closely that he originally believed that the van could have been towing the Impala. He decided to stop the Impala for following the van too closely. As he approached the two vehicles near a truck weigh station, the Impala changed lanes, going into the right lane.

{¶ 4} As the two vehicles approached the entrance ramp from the weigh station, a truck was entering the highway. The driver of the van, which was still in the left lane, seemed to be startled by the truck entering the highway and swerved sharply to the left, partially going over the berm lane lines. The van then swerved back to the right over the marked lane line, but overcompensated and almost collided with the truck to its right.

{¶ 5} After observing these movements by the van, Morgan decided to stop the van instead of the Impala. He radioed to Agent Arnold to stop the Impala for following the van too closely. Arnold followed the Impala, which then committed several lane violations. Arnold testified that drug traffickers on the highway frequently travel in tandem and that one car would often commit traffic violations to distract police officers' attention from the vehicle actually carrying the drugs.

{¶ 6} Morgan activated his lights and siren. Although the van pulled over to the berm and continued for a long time, it eventually stopped. The van had no rear windows. Before his approach on foot, Morgan could not see the driver or determine the number of occupants in the van. As he approached it from the passenger side, he detected an overwhelming odor of carpet freshener, which he described as "almost sickening." He testified that carpet freshener was a method often used by drug dealers to mask the odor of drugs.

{¶ 7} Lopez was the driver of the van. Morgan took Lopez's driver's license and found that he had no criminal record. When asked about his erratic driving, Lopez stated that he was not used to driving the van. He also stated that he was traveling from Chicago to Cincinnati to sell boxes, although he later claimed to be traveling from Indianapolis. He did not know the name of the person he was going to meet in Cincinnati, but he stated that he expected that person to call him when he got closer. Morgan felt Lopez's inability to answer simple questions about his activities, along with the strong odor of carpet freshener, was suspicious. Lopez did not have the rental papers for the van. He told Morgan he was traveling alone, and he became very nervous when Morgan questioned him about the contents of the van and mentioned the possibility of a drug dog being brought to the scene to sniff the vehicle.

{¶ 8} Meanwhile, Agent Arnold had stopped the Impala, driven by Ernest Hollingsworth. As Arnold approached the car, he detected an odor of raw marijuana. Despite Hollingsworth's denial of any criminal record, Arnold discovered that he had an extensive record of drug offenses.

{¶ 9} Arnold had with him his drug-sniffing dog, Bo. Bo indicated the presence of drugs in the Impala. Agent Canada arrived to help with the stop. Inside the Impala, Canada found the rental documents for both the Impala and the van, which were both in Hollingsworth's name.

{¶ 10} Morgan asked Arnold to bring Bo to his location to determine whether drugs were in the van. Lopez had previously refused to consent to a search of the van's cargo compartment. Bo indicated that drugs were present in the van. A search of the van resulted in the discovery of approximately 700 pounds of marijuana.

{¶ 11} Lopez now presents four assignments of error for review. Before addressing the merits of those assignments of error, we note that Lopez's original attorney in this appeal was granted permission to withdraw after he had filed a brief on Lopez's behalf. His newly appointed attorney has filed a "supplemental" brief in which he has relied upon the original brief's statements of fact, but has raised his own assignments of error. Although Lopez filed a pro se motion to strike the original brief, this court did not rule on that motion. Nevertheless, the assignments of error in the original brief were largely the same as those in the

supplemental brief. Consequently, we discuss only the assignments of error in the supplemental brief in this opinion.

{¶ 12} In his first assignment of error, Lopez contends that the stop of his vehicle violated his Fourth Amendment rights. He argues that the police officers lacked "probable cause" to stop his vehicle. This assignment of error is not well taken.

{¶ 13} An investigative stop is a seizure within the meaning of the Fourth Amendment that must be supported by objective justification. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271; *State v. Neu* (Mar. 3, 2000), 1st Dist. No. 990552, 2000 WL 238098. The standard is not probable cause but reasonable suspicion, which is less demanding. *State v. Lowman* (1992), 82 Ohio App.3d 831, 837, 613 N.E.2d 692; *State v. Moore*, 6th Dist. No. H–02–001, 2002-Ohio-4476, 2002 WL 1998447, ¶ 10–11. See, also, *State v. Kiefer*, 1st Dist. No. C–030205, 2004-Ohio-5054, 2004 WL 2244553, ¶ 11–12 and 17–19. The police officers must point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Andrews*, supra, 54 Ohio St.3d at 87, 565 N.E.2d 1271, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. The standard is objective: would the facts available to the officers at the moment of the seizure have warranted an individual of reasonable caution in the belief that the action taken was appropriate? *Andrews*, supra, 54 Ohio St.3d at 87, 565 N.E.2d 1271; *State v. Black* (Dec. 31, 1998), 1st Dist. No. C–970874, 1998 WL 906351.

{¶ 14} Specifically, in relation to automobiles, if there is a reasonable and articulable suspicion that an automobile or its occupants are subject to seizure for a violation of the law, stopping that automobile and detaining its occupants are reasonable under the Fourth Amendment. *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660. A court determines the validity of an investigative stop by looking at the totality of the circumstances. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph two of the syllabus. An officer's observation of a traffic violation or erratic driving justifies an investigative stop. *Moore*, supra, at ¶ 12; *State v. Pence* (July 29, 1996), 12th Dist. No. CA95–09–020, 1996 WL 421764. See, also, *State v. Robinette* (1997), 80 Ohio St.3d 234, 239, 685 N.E.2d 762; *State v. Evans* (1993), 67 Ohio St.3d 405, 407, 618 N.E.2d 162.

{¶ 15} In this case, the police officers saw Lopez swerve far to the left, almost driving off the berm and into the grass median, and then overcompensate to the right to the point where he almost hit a truck. As the trial court noted, the testimony showed that Lopez had violated R.C. 4511.33, which requires vehicles to travel in marked lanes, and R.C. 4511.202, which prohibits operating a vehicle

without reasonable control. Thus, the officers could point to specific, articulable facts showing that Lopez was subject to seizure for violating the law.

{¶ 16} Lopez's erratic driving went well beyond the slight weaving and "insubstantial drifts" in the cases Lopez has cited. See *State v. Johnson* (1995), 105 Ohio App.3d 37, 663 N.E.2d 675; *State v. Drogi* (1994), 96 Ohio App.3d 466, 645 N.E.2d 153; *State v. Gullett* (1992), 78 Ohio App.3d 138, 604 N.E.2d 176. Further, those cases are no longer valid precedent. See *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, ¶ 11–26; *State v. Hicks*, 7th Dist. No. 01 CO 42, 2002-Ohio-3207, 2002 WL 1396802, ¶ 15–34; *State v. Moeller* (Oct. 23, 2000), 12th Dist. No. CA99–07–128, 2000 WL 1577287. Under the circumstances, the stop of Lopez's vehicle did not violate his Fourth Amendment rights, and we overrule his first assignment of error.

{¶ 17} In his second assignment of error, Lopez contends that his continued detention after the initial stop and the use of a drug-sniffing dog violated his Fourth Amendment rights. He argues that the search and seizure were unreasonable in the absence of an individual suspicion of wrongdoing. This assignment of error is not well taken.

{¶ 18} The Ohio Supreme Court has held that "[w]hen a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." *Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762, at paragraph one of the syllabus.

{¶ 19} In this case, the police could point to specific, articulable facts showing that Lopez may have been violating the law, which justified his continued detention. One of the first things the officer noticed upon approaching the van was the overwhelming odor of carpet freshener, which, in his experience, was often used by drug dealers to mask the odor of drugs. A court reviewing a police officer's actions must give due weight to the officer's experience and training and view the evidence as those in law enforcement would understand it. *Andrews*, 57 Ohio St.3d at 88, 565 N.E.2d 1271.

{¶ 20} Further, Lopez was evasive in answering simple questions. The Impala had been closely following the van. As soon as the police showed an interest in the van, the Impala quickly sped away and committed several lane violations. The officers knew that drug dealers would often use another vehicle to distract police from the vehicle carrying the drugs. Based on these facts, the police

officers' continued detention of Lopez did not violate his Fourth Amendment rights.

{¶ 21} Further, if a vehicle is lawfully detained, an exterior sniff by a drug dog is not a search within the meaning of the United States or. Ohio Constitution. *United States v. Place* (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110; *In the Matter of Dengg* (1999), 132 Ohio App.3d 360, 365, 724 N.E.2d 1255; *State v. Bordieri*, 6th Dist. No. L–04–1321, 2005-Ohio-4727, 2005 WL 2174652, ¶ 22; *State v. Morales*, 5th Dist. No. 2004 CA 68, 2005-Ohio-4714, 2005 WL 2175144, ¶ 68. Police need not have a reasonable suspicion of drug-related activity before subjecting an otherwise lawfully detained vehicle to a drug sniff. *Dengg* at 365, 724 N.E.2d 1255; *Bordieri* at ¶ 22. Because Lopez's vehicle was lawfully detained, the dog's sniff of his vehicle did not violate his Fourth Amendment rights. See *United States v. Foreman* (C.A.4, 2004), 369 F.3d 776, 781–786.

{¶ 22} Under the automobile exception to the warrant requirement, police may conduct a warrantless search of an entire vehicle if the police officers have probable cause to believe that they will discover evidence of a crime. *United States v. Ross* (1982), 456 U.S. 798, 800–801, 102 S.Ct. 2157, 72 L.Ed.2d 572; *State v. Moore* (2000), 90 Ohio St.3d 47, 51, 734 N.E.2d 804; *Dengg*, 132 Ohio App.3d at 365, 724 N.E.2d 1255. Once a properly trained dog indicates the odor of drugs in a lawfully detained vehicle, police have probable cause to search the vehicle. Id. at 366, 724 N.E.2d 1255; *Bordieri* at ¶ 22; *Morales*, supra, at ¶ 68.

{¶ 23} In this case, the dog's quick and decisive alert to drugs in the vehicle would alone have provided probable cause to search it. Certainly, the dog's alert, together with the tandem driving of the van and Impala, the odor of carpet freshener, and Lopez's evasiveness and nervousness, provided probable cause for the search of the van. Consequently, we find no violation of Lopez's Fourth Amendment rights, and we overrule his second assignment of error.

{¶ 24} In his third assignment of error, Lopez contends that the trial court erred by admitting testimony about the drug-detection dog's sniff of the van. He argues that the state failed to prove the dog's qualifications or that his handler was properly certified. This assignment of error is not well taken.

{¶ 25} As we have previously stated, an alert from a properly trained drug-detection dog provides probable cause to search a vehicle. *Dengg*, 132 Ohio App.3d at 366, 724 N.E.2d 1255; *Bordieri*, 6th Dist. No. L–04–1321, 2005-Ohio-4727, 2005 WL 2174652, at ¶ 22: *Morales*, 5th Dist. No. 2004 CA 68, 2005-Ohio-4714, 2005 WL 2175144, at ¶ 68. Some disagreement exists among courts about

what evidence is necessary to show that a dog is reliable and properly trained. Nevertheless, the majority hold that the state can establish reliability by presenting evidence of the dog's training and certification, which can be testimonial or documentary. Once the state establishes reliability, the defendant can attack the dog's "credibility" by evidence relating to training procedures, certification standards, and real-world reliability. *State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, ¶ 22–55; *State v. Calhoun* (May 3, 1995), 9th Dist. No. 94CA005824, 1995 WL 255929; *State v. Knight* (C.P.1997), 83 Ohio Misc.2d 79, 86, 679 N.E.2d 758; *United States v. Diaz* (C.A.6, 1994), 25 F.3d 392, 394–396. We agree with the reasoning of these cases.

{¶ 26} Lopez seems to argue that the state must present evidence on every requirement for training and certification of dogs and handlers in the Ohio Administrative Code. See Ohio Adm.Code 109:2-7-03 and 109:2-7-05. We disagree. In this case, the state submitted Arnold's and Bo's training certificates into evidence, as well as a letter from the training school showing that Arnold and Bo had passed the required courses. Lopez argues that these documents were inadmissible into evidence for various reasons. Even if they were inadmissible, Arnold testified that he and Bo were certified and that they went through the certification process every two years. He also testified regarding the training courses that he had taken with Bo. That evidence was sufficient to meet the state's burden of showing that the dog was reliable. Lopez could then have presented evidence that the proper procedures for training and certification in the administrative code were not followed. In fact, he cross-examined Arnold fairly extensively about Bo's training and reliability.

{¶ 27} The trial court found that the dog was properly certified and that he was reliable. Because that finding was based on competent, credible evidence, this court must accept it. *State v. Brewster*, 1st Dist. Nos. C–030024 and C–030025, 2004-Ohio-2993, 2004 WL 1284008, ¶ 22. Accordingly, the trial court did not err in failing to exclude testimony about the dog, and we overrule Lopez's third assignment of error.

 {¶ 28} In his fourth assignment of error, Lopez contends that the trial court erred in accepting his no-contest plea. At the plea hearing, Lopez stated that his due-process rights had been ignored and that he felt that he had no redress for those violations. He argues that his statements indicated that he wished to "establish his trial rights." This assignment of error is not well taken.

 {¶ 29} If a defendant does not make a plea voluntarily, enforcement of that plea is unconstitutional. *State v. Engle* (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450; *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 16. A plea is voluntary if it "represents a voluntary and intelligent choice

among the alternative courses of action open to the defendant." *Gordon,* supra, at ¶ 17, quoting *North Carolina v. Alford* (1970), 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162. The "motivational niceties" of a plea are not an element of inquiry required of a trial court before it accepts the plea. The court's inquiry is whether the accused, no matter what his motivations, knows and understands the legal implication of waiving his statutory and constitutional rights. No violation of rights occurs unless the record shows from the totality of the circumstances that the accused's plea has not been intelligently and voluntarily made. *State v. Holder* (1994), 97 Ohio App.3d 486, 493, 646 N.E.2d 1173.

{¶ 30} The record shows that the trial court initially accepted Lopez's no-contest plea. When the court asked Lopez if he wished to make a statement in mitigation of sentence, Lopez stated, "Since my being stopped, I have had several problems as far as the issues concerning the due process. * * * There are a lot of things that, because of the way the cases have been set up in these courts, that I'm not able to challenge." He discussed how he believed that the police officers had perjured themselves and that the drug task force involved in his stop had exhibited a pattern of inappropriate behavior. He added, "I haven't had the opportunity to say anything since I have been here and it's not been in my best interest anyhow, other than this, and I don't expect it to be so much as acknowledged, but I did want to make at least that statement."

{¶ 31} Then, the following exchange occurred:

{¶ 32} "THE COURT: I'm not sure I can accept this plea. What's he saying he's not been granted any due process rights?

{¶ 33} "MR. GOLDBERG [Lopez's counsel]: * * * I believe he's addressing the suppression issues.

{¶ 34} "THE COURT: Is that what you're talking about—

{¶ 35} "MR. GOLDBERG: The stop.

{¶ 36} "THE COURT: —or something else?

{¶ 37} "MR. GOLDBERG: Right.

{¶ 38} "THE DEFENDANT: Yes, sir."

{¶ 39} The court asked Lopez about the due-process violation that he believed had occurred. Lopez contended that when he was initially arrested, he was placed in a psychiatric unit in the jail, which he believed was a ploy to keep him from having access to the public and to his attorney. This exchange followed:

{¶ 40} "MR. GOLDBERG: Judge, these issues really have nothing to do with the plea?

{¶ 41} "THE DEFENDANT: Right, correct.

{¶ 42} "THE COURT: There's a statement on the record that he's been denied due process and I'm not going to let that go, I want him to explain what he's—

{¶ 43} "THE DEFENDANT: I would be happy to, sir.

{¶ 44} "MR. GOLDBERG: He's not denying the facts in the indictment?

{¶ 45} "THE DEFENDANT: No, I'm not.

{¶ 46} "MR. GOLDBERG: Is that correct?

{¶ 47} "THE DEFENDANT: That's correct."

{¶ 48} Thus, the record demonstrates that Lopez understood that by entering a no-contest plea he was admitting the facts in the indictment and that his "due process" issues were related to matters decided by the court in overruling his motion to suppress or to matters that were irrelevant to the plea. Lopez did not waive the issues related to the denial of his motion to suppress by pleading no contest, and he has actually raised those issues on appeal. See Crim.R. 12(I); *State v. Feliciano,* 11th Dist. No. 2004–L–205, 2006-Ohio-1678, 2006 WL 847125, ¶ 13.

{¶ 49} Our review of the record shows that the trial court strictly complied with the provisions of Crim.R. 11(C) and correctly informed Lopez of the constitutional rights enumerated in *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, that he would be waiving by pleading no contest. The court also substantially complied with the rule in all other respects. See *State v. Ballard* (1981), 66 Ohio St.2d 473, 477–481, 20 O.O.3d 397, 423 N.E.2d 115; *State v. McCann* (1997), 120 Ohio App.3d 505, 507–508, 698 N.E.2d 470. The trial court conducted a meaningful dialogue to ensure that Lopez's plea was made knowingly and voluntarily. Consequently, the trial court did not err in accepting his plea. We overrule Lopez's fourth assignment of error and affirm his convictions.

Judgment affirmed.

HILDEBRANDT and PAINTER, JJ., concur.