[Cite as *State v. Winningham*, 2011-Ohio-6229.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110134 |
|  |  | TRIAL NO. B-1005107A |
| Plaintiff-Appellee, | : |  |
|  |  | *O P I N I O N.* |
| vs. | : |  |
| LAWRENCE WINNINGHAM, | : |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 7, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *James Michael Keeling*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**DINKELACKER, Presiding Judge.**

{¶1}     Defendant-appellant Lawrence Winningham appeals his conviction for trafficking in marijuana under R.C. 2925.03(A)(2).   We find no merit in his sole assignment of error, and we affirm the trial court's judgment.

### I.   Facts and Procedure

{¶2}     The record shows that Cincinnati police officers received information from a confidential informant that Winningham had often driven to Chicago to purchase marijuana and had brought it back to Cincinnati for distribution.   They watched Winningham for a couple of weeks and saw that he never went to work anywhere and that he had a pattern of making frequent brief stops.   He paid for the utilities on an apartment, yet he was unemployed.   He also lived in a house with another person who had a drug history.   Based on the officers' experience, these behaviors were consistent with trafficking in drugs.

{¶3}     On June 23, 2010, the officers obtained a warrant to place a GPS tracker on Winningham's truck.   Under the cover of darkness, they put the tracker on the underside of the truck, which was parked on the street in front of Winningham's residence.   They used a website to monitor the truck's movements.   Because constant monitoring would have drained the tracker's battery, the officers set up a "fence," meaning that the tracker would alert them if Winningham's truck left the Interstate-275 loop.

{¶4}     The warrant expired after 30 days without producing any information that would have supported Winningham's arrest.   The officers sought to renew the warrant using the same information that had supported the original warrant.   They obtained the second warrant on July 23, 2010.

{¶5}    On July 30, 2010, the GPS monitoring system alerted the officers that Winningham's truck had traveled outside the Interstate-275 loop. They tracked it to Chicago, where it remained for six to eight hours. The officers monitored the truck as it returned and stopped it just after it crossed into Ohio. A drug-sniffing dog alerted them to the presence of drugs. Subsequently, the police officers found a large quantity of marijuana in the truck bed under a piece of carpet, and they arrested Winningham.

{¶6}    Winningham filed a motion to suppress the marijuana and other evidence in which he contended that the search and seizure of his truck violated his Fourth Amendment rights. The trial court overruled the motion. Following a bench trial, the court found him guilty as charged and sentenced him appropriately. This appeal followed.

{¶7}    In his sole assignment of error, Winningham contends that the trial court erred in overruling his motion to suppress. He argues that both warrants were improper anticipatory warrants, and that the information was too stale to support the issuance of the second warrant. This assignment of error is not well taken.

## II.  Standard of Review

{¶8}    Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8; *State v. Hampton*, 1st Dist. No. C-080187, 2008-Ohio-6088, ¶12.

## III.  No Warrant Necessary for Use of the GPS Tracker

{¶9}    We need not reach the issue of whether either of the warrants was valid because we hold that a warrant was unnecessary under the facts of this case. The law on

whether the use of a GPS tracker requires a warrant is unsettled. The issue is currently before both the United States Supreme Court and the Ohio Supreme Court. See *State v. Johnson*, 190 Ohio App.3d 750, 2010-Ohio-5808, 944 N.E.2d 270, discretionary appeal allowed, 128 Ohio St.3d 1425, 2011-Ohio-1049, 943 N.E.2d 572; *United States v. Maynard* (C.A.D.C. 2010), 615 F.3d 544, certiorari granted sub nom., *United States v. Jones* (2011), ____ U.S. ____, 131 S.Ct. 3064. But we find the arguments in support of the conclusion that a warrant is unnecessary to be more persuasive.

### A. No Reasonable Expectation of Privacy in the Exterior of a Car

{¶10} "The Fourth Amendment protects the individual's actual and justifiable expectation of privacy from the ear and eye of the government." *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶13. A party challenging a search on Fourth Amendment grounds must show: (1) that he or she had a subjective expectation of privacy in the object of the search, and (2) that society recognizes that expectation as reasonable. *California v. Ciraolo* (1986), 476 U.S. 207, 211, 106 S.Ct. 1809; *Stone v. Stow* (1992), 64 Ohio St.3d 156, 163-164, 593 N.E.2d 294.

{¶11} Not every observation made by a law enforcement officer, even if intended to expose criminal activity, constitutes a search within the meaning of the Fourth Amendment. *State v. Israel* (Sept. 26, 1997), 1st Dist. No. C-961006. A person loses an expectation of privacy in those things that person voluntarily exposes to the public. The police are free to observe whatever may be seen from a place where they are entitled to be. *Buzzard*, supra, at ¶15; *Israel*, supra.

{¶12} No reasonable expectation of privacy exists in the exterior of a car because "the exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.' " *Johnson*, supra, at ¶23, quoting *New York v. Class* (1986), 475 U.S. 106, 114, 106 S.Ct. 960. This lack of privacy in a car's exterior

includes its undercarriage. *Johnson*, supra, at ¶23; *United States v. Rascon-Ortiz* (C.A.10, 1993), 994 F.2d 749, 754.

### B. No Reasonable Expectation of Privacy in Travel on a Public Road

{¶13}  In addition to the lack of an expectation of privacy in a vehicle's exterior, the United States Supreme Court has also established that travel on public roads does not implicate the Fourth Amendment. *Johnson*, supra, at ¶28. In *United States v. Knotts* (1983), 460 U.S. 276, 103 S.Ct. 1081, the defendant was convicted of conspiracy to manufacture methamphetamine. Police officers, without a warrant, placed a beeper, which was a radio transmitter, into a drum of chloroform. After a codefendant loaded the drum into his car, the police officers tracked the beeper to the defendant's cabin where they discovered a drug laboratory.

{¶14}  The court held that the use of the beeper and the subsequent monitoring of the beeper signals did not invade any legitimate expectation of privacy and, therefore, it did not constitute a search or seizure within the meaning of the Fourth Amendment. Id. at 285. Based upon the lesser expectation of privacy in a motor vehicle, it reasoned that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another. When [the codefendant] traveled over public streets he voluntarily conveyed to anyone who wanted to look the fact that he was traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property." Id. at 281-282.

{¶15}  The court rejected the argument that the use of the beeper radio technology brought the facts of that case into the realm of Fourth Amendment protection. It stated, "Visual surveillance from public places along [the

codefendant's] route or adjoining [the defendant's] residence would have sufficed to reveal all of these facts to the police. The fact that the officers in this case relied not only on visual surveillance, but also on the use of the beeper to signal the presence of [the codefendant's] automobile to the police receiver, does not alter the situation. Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case." Id. at 282.

### C. Application in this Case

{¶16}   In this case, Winningham had parked his truck on a public street in plain view of the public. He did not take any steps to exclude passersby from the area. The officers were able to walk up to the truck on the street and place the GPS tracker on its undercarriage. Winningham has not demonstrated that he had intended to guard the undercarriage of his truck from inspection by others, and he had no reasonable expectation of privacy in it. See *Johnson*, supra, at ¶25.

{¶17}   Further, Winningham made no attempt to keep his activities private. He openly traveled on the road where any onlooker could have seen his movements. The GPS tracker revealed no more information than the police officers could have obtained by visual surveillance. Following a suspect on a public road is not a search that implicates the Fourth Amendment, and the "scientific enhancement" in this case raised "no constitutional issues which visual surveillance would not also raise." *Johnson*, supra, at ¶34, quoting *Knotts*, supra, at 285.

{¶18}   Winningham argues that the use of the GPS technology is far more invasive of an individual's privacy then visual surveillance. He cites *Maynard*, supra, in which the court stated, "It is one thing for a passerby to observe or even follow someone during a single journey as he goes to the market or returns home from

6

work. It is another thing entirely for that stranger to pick up the scent again the next day and the day after that, week in and week out, dogging his prey until he had identified all the places, people, amusements, and chores that make up that person's hitherto private routine." Id. at 560. See, also, *State v. Sullivan*, 5th Dist. No. 2010-CA-52, 2011-Ohio-4967.

{¶19} But nothing in the Fourth Amendment requires the police to forego technology simply because it makes police work more efficient or acts as a substitute for countless man hours. *Brown*, supra, at ¶35. As the Supreme Court has stated, "We have never equated police efficiency with unconstitutionality[.]" *Knotts*, supra, at 284.

{¶20} Consequently, we hold that Winningham had no legitimate expectation of privacy in the exterior and undercarriage of his truck or in his travel on public roads. Therefore, the police officers' attachment of a GPS tracker to the truck and their subsequent monitoring of his travel was not a search or seizure that implicated the Fourth Amendment.

### IV. No Warrant Necessary for Search and Seizure of the Truck

{¶21} Once the GPS tracker had alerted the police officers that Winningham's truck had left the Interstate-275 loop and traveled to Chicago, the officers had a reasonable and articulable suspicion that the truck and its occupants were subject to seizure for violating the law. Therefore, stopping his truck and detaining its occupants was reasonable under the Fourth Amendment. See *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391; *State v. Lopez*, 166 Ohio App.3d 337, 2006-Ohio-2091, 850 N.E.2d 781, ¶14.

{¶22} Finally, the search of Winningham's truck without a warrant did not violate the Fourth Amendment. Under the automobile exception to the warrant

requirement, police may conduct a warrantless search of an entire vehicle if the police officers have probable cause to believe that they will discover evidence of a crime. *United States v. Ross* (1982), 456 U.S. 798, 800-801, 102 S.Ct. 2157; *State v. Moore*, 90 Ohio St.3d 47, 51, 2000-Ohio-10, 734 N.E.2d 804; *Lopez*, supra, at ¶22. Once a properly trained dog indicates the odor of drugs in a lawfully detained vehicle, police have probable cause to search the vehicle. *Lopez*, supra, at ¶22.

{¶**23**}   In this case, the dog's alert to drugs in the vehicle, together with the other information that the police had obtained about Winningham's activities, was sufficient to warrant a prudent person in believing that Winningham was committing or had committed an offense.   Therefore, they had probable cause to search the truck. See *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223; *State v. Stallings*, 1st Dist. No. C-030233, 2003-Ohio-6918, ¶12.

{¶**24**}   Because we hold that the use of the GPS tracker and the subsequent stop and search of Winningham's truck did not require a warrant, we do not reach the issue of the validity of the two warrants in this case.   Nothing in this opinion should be construed as sanctioning the use of a warrant based on information that is over 30 days old and not supplemented by new information.   With that caveat, we hold that the trial court did not err in overruling Winningham's motion to suppress. We overrule his assignment of error and affirm his conviction.

Judgment affirmed.

**HILDEBRANDT** and **HENDON, JJ.,** concur.

Please Note:
    The court has recorded its own entry this date.

8