[Cite as *State v. Newman*, 2021-Ohio-119.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| KYLIE NEWMAN | : | Case No. 2020 CA 0018 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Richland County
Court of Common Pleas, Case No.
2019-CR-0389

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      January 19, 2021

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

GARY BISHOP      MICHAEL E. STEPANIK
Prosecuting Attorney      ALISSA R. BARBOSKY
Richland County, Ohio      520 Broadway Avenue, 1st Floor
Lorain, Ohio 44052

By: JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

{¶1}    Defendant-appellant Kylie Newman appeals from the denial by the Richland County Court of Common Pleas of her Motion to Suppress. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}    On May 10, 2019, the Richland County Grand Jury indicted appellant on one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(g), a felony of the first degree, one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f), a felony of the first degree, one count of aggravated funding of drug trafficking in violation of R.C. 2925.05(A)(3) and (C)(1), a felony of the first degree, and one count of operating a vehicle with a hidden compartment used to transport a controlled substance in violation of R.C. 2923.241(C) and (F), a felony of the second degree. The indictment also contained three forfeiture specifications and a major drug offender specification. At her arraignment on May 28, 2019, appellant entered a plea of not guilty to the charges.

{¶3}    On September 25, 2019, appellant filed a Motion to Suppress. A hearing on such motion commenced on October 22, 2019.

{¶4}    At the hearing, Trooper Colt Browne of the Ohio State Highway Patrol testified that he was working on February 6, 2019 and was in uniform in a marked cruiser. His cruiser was positioned on U.S. 30. Trooper Browne testified that he had been contacted by his supervisor that a vehicle believed to be transporting drugs was traveling northbound on I-71 from U.S. 30. He testified that he was given a description of the vehicle, the license plate number and the identity of the occupants and "that it was a group that we had made contact with before,…" Transcript at 33. He was also told that there

may be drugs in the vehicle and that the vehicle was traveling from Texas to Ohio. He testified that he was instructed to pull over the vehicle if he found probable cause to do so.

{¶5}   Trooper Browne was eventually notified over the radio that the vehicle had just entered Richland County and was approaching his position. After making a visual estimate that the vehicle was exceeding the speed limit, the Trooper used his laser a series of times to check its speed. The laser indicated that the vehicle was traveling 60, 54, and then 50 miles an hour.  Trooper Browne testified that he noticed the nose of the vehicle dip as it rapidly decelerated down to 50 miles per hour. The posted speed limit was 55 miles per hour. The Trooper testified that he began to tail the vehicle. He testified that he was able to catch up with the vehicle a couple of miles down the road.  Trooper Browne testified that he pulled alongside the vehicle and observed that the driver and right front passenger were rigid in their seats and that while they appeared to be talking to each other, they were not making eye contact. He testified that they "were straight ahead." Transcript at 54.  The Trooper then initiated a traffic stop for speeding.

{¶6}   The vehicle then pulled over on the berm of U.S. 30. He testified that appellant, the driver, began frantically searching for her driver's license in her purse. Appellant eventually turned over a valid drivers' license.  However, she handed over invalid insurance information. Trooper Browne then asked appellant if she had updated insurance and she did not but said that she might be able to find updated insurance information in her phone. She began looking into her phone for the insurance information.

{¶7}   While appellant was looking though her phone, German Zuniga, a passenger, asked if the Trooper was involved in a previous traffic stop with him on

December of 2018 and the Trooper responded affirmatively. Trooper Browne's sergeant had told him that it was the same group.

{¶8} After appellant handed the Trooper an outdated insurance card, he asked her if she had a more updated card. He asked appellant to exit the vehicle to try to get her to show her insurance and to continue with his check and so that he would have an easier time talking to her. Appellant then exited her vehicle but stopped and tied her shoe while still in the road. Appellant wanted the Trooper to look up her insurance company and call them through Google. Because it is the driver's duty to provide the insurance, Trooper Browne told appellant to keep trying to find the insurance in her emails.

{¶9} Trooper Browne asked appellant where they were coming from and appellant indicated Houston. She told him that they had been visiting Zuniga's relative who had throat cancer but was unable to identify the hospital that he was in. Appellant told him that they were headed home to Lorain, but they were headed in the opposite direction. At the 8 minute and 43 second mark into the stop, Trooper Browne advised appellant of her rights but did not take her into custody. Appellant, at that point, had not given him her insurance information. Appellant told the Trooper that she did not want to sit in the back of his car and her let her stand outside. Trooper Browne testified that German Zuniga, the passenger, told him that they were going to Lorain but once he realized that they were traveling in the wrong direction, said that they were going somewhere to get outfits for his daughters.

{¶10} Trooper Browne testified that based on his past interaction with appellant and Zuniga, they appeared more nervous than previously. Appellant had yet to produce any current proof of insurance at the 14 minute 16 second mark. Due to their

nervousness, Trooper Browne decided to walk his canine Atos around the vehicle. At fifteen minutes into the traffic stop. Trooper Browne performed a free air search around the vehicle with Atos. He testified that he went to the Ohio State Highway Patrol K9 school. Trooper Browne and Atos have received multiple training certifications from the Ohio Attorney General Peace Officer Training Commission. Trooper Browne testified that they had continual maintenance training that was a minimum of 16 hours a month.

{¶11} During the second pass of the free air sniff, Atos breathed in the vehicle's exhaust fumes and disengaged with the vehicle. Atos was not very interested in sniffing around the vehicle the second time. Trooper Browne agreed that Atos' capability of smelling was at least temporarily compromised and his interest and engagement were also temporarily compromised due to the vehicle exhaust fumes. During his third walk around the vehicle, Atos reengaged and showed positive body language by wagging his tail and canting his head back to the vehicle. During his fourth walk, Atos gave his final indication by attempting to lie down in the areas directly under the vehicle on the driver's side.

{¶12} Based on the positive indications from Atos, Trooper Brown conducted a search of the vehicle. He testified that substances were found in the toolbox in the bed of the truck and the false bottom on the toolbox on the driver's side near where Atos had been indicated. When he opened the tool box, "[i]t looked completely off because the depth was off." Transcript at 150. Ten packages of cocaine were found in the secret compartment. Appellant and the other occupants of the vehicle were then arrested.

{¶13} On cross-examination, Trooper Browne testified that in December of 2018, he had stopped a vehicle in Amherst, Ohio and that appellant was a passenger in the

same.  He testified that the vehicle was stopped based upon a tip. While the K9 alerted to the presence of drugs in the vehicle, no illegal narcotics were found during a search of the vehicle.

{¶14} Sergeant Rich Barrett testified as an expert in K9 training and law enforcement K9 training in drug detection for the State of Ohio.  He has over twelve years of experience in being a K9 officer and training approximately two hundred K9 teams. Sergeant Barrett testified that it was his expert opinion that Trooper Browne and Atos were an effective team and that the Trooper did not force Atos into a final indication. He testified that K9s with the Ohio State Highway Patrol are trained to detect the source of odors and that due to the poor construction of the secret department in the toolbox, it would not prevent the dot of the narcotics from leaking out. He further testified that while usually K9s are trained to  make one and a half to two passes of a vehicle , Atos was taken around appellant's vehicle more than twice because of the extenuating circumstances of his encounter with the vehicle's' exhaust. Sergeant Barrett opined that Atos did alert and subsequently indicate to the odor of narcotics emanating from the vehicle. His Expert Opinion Report was admitted as an exhibit.

{¶15} At the suppression hearing, appellant called Andre Falco Jimenez as an expert in K9 training. He testified that his business had a history of training dogs for police work and that he had been in the business of training K9s for approximately 20 years.  He was recognized as an expert in K9 training, including scent detection.  He testified that a K9 cannot find the source of narcotic odor.  Jimenez is the author of a publication titled "Big Income Expertise How Even You Can Be an Expert on Anything and Profit From It."

{¶16} On or about December 12, 2019, the trial court denied appellant's Motion to Suppress. On December 13, 2019, appellant entered a plea of no contest to the charges and was found guilty. Pursuant to a Sentencing Entry filed on January 9 2020, appellant was sentenced to an aggregate prison term of eleven years.

{¶17} Appellant now raises the following assignments of error on appeal:

{¶18} "I. APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTIONS WERE VIOLATED WHEN THE ARRESTING OFFICER UNREASONABLY PROLONGED THE TRAFFIC STOP IN ORDER TO ALLOW A DRUG-SNIFFING DOG TO SNIFF APPELLANT'S VEHICLE."

{¶19} "II. APPELLANT'S RIGHTS UNDER ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION WERE VIOLATED WHEN THE ARRESTING OFFICER UNREASONABLY PROLONGED THE TRAFFIC STOP IN ORDER TO ALLOW A DRUG-SNIFFING DOG TO SNIFF APPELLANT'S VEHICLE."

{¶20} "III. THE STATE OF OHIO FAILED TO PRODUCE SUFFICIENT EVIDENCE THAT K-9 ATOS PERFORMS RELIABLY IN DETECTING DRUGS IN VIOLATION OF *FLORIDA V. HARRIS*, 568 U.S. 237(2013)."

{¶21} "IV. THE STATE OF OHIO'S FAILURE TO MAINTAIN RECORDS OF K-9 PERFORMANCES, PARTICULARLY WHERE THERE ARE KNOWN ERRORS IN THE FILED, VIOLATES DUE PROCESS AND IS VIOLATIVE OF *BRADY V. MARYLAND*."

{¶22} "V. THE TRIAL COURT ERRED IN DETERMINING THAT K-9 ATOS ALERTED TO THE VEHICLE BEING OPERATED BY MS. NEWMAN."

**I, II, III, IV, V**

{¶23}  Appellant, in her five assignments of error, challenges the trial court's denial of her Motion to Suppress.

{¶24} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶25} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams,*

*supra.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

**{¶26}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶27}** Appellant argues that the Trooper unreasonably prolonged the traffic stop in order to allow a drug-detecting dog to sniff her vehicle and, in doing so, violated her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 and Section 14 of the Ohio Constitution.

**{¶28}** "' [W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning.' " *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12, quoting *State v. Keathley*, 55 Ohio App.3d 130, 131, 562 N.E.2d 932 (2nd Dist. Miami 1988). "This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." *Id.*, citing *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 17, citing *Delaware v. Prouse,* 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660(1979). Additionally, " '[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted

the investigation.' " *Id.*, quoting *State v. Carlson*, 102 Ohio App.3d 585, 598-599, 657 N.E.2d 591(9th Dist. Medina 1995), citing *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992), and *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

**{¶29}** "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Indeed, "[t]he lawfulness of the initial stop will not support a fishing expedition for evidence of crime." *State v. Gonyou,* 108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th Dist.1995). Still, "the detention of a stopped driver may continue beyond the [normal time] frame when additional facts are encountered to give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *State v. Batchili,* 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, ¶ 15.

**{¶30}** The trial court found, and we agree, that Trooper Browne did not unreasonably prolong the stop. There was testimony that he was still in the process of conducting the traffic stop when he walked his K9 around appellant's vehicle. Appellant was still in the process of looking for proof of insurance. Approximately thirteen minutes had passed between the stop and the K9 sniff and appellant was still attempting to locate current proof of insurance. As noted by the trial court, Trooper Browne testified that he was going to give appellant a warning for her speeding as long as she was able to provide proof of insurance. We note that in *State v. Guinto*, 5th District Ashland Nos. 12-COA-031 and 12-COA-032, 2013-Ohio-2180, this Court held that a thirty-one (31) minute delay from the time of the stop until the time of the drug dog hit was attributable to the necessity

that the appellant produce valid proof of insurance and that there was no violation of the appellant's Fourth Amendment rights.  In the case sub judice the delay was attributable to the necessity that appellant provide valid proof of insurance.

**{¶31}** Appellant also argues that the State of Ohio failed to produce sufficient proof that K9 Atos performs reliably in detecting drugs in violation of *Florida v. Harris*, 568 U.S. 237, 133 S.Ct. 1050 (2013). Appellant notes that at the suppression hearing, Sergeant Barrett of the Ohio State Highway Patrol testified that the Patrol no longer kept records of a K9 unit's performance in the field. Appellant argues that this violated due process and is violative of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194.

**{¶32}** In *Florida v. Harris,* 568   U.S.   237, 133 S.Ct. 1050 (2012),   the   U.S. Supreme Court addressed how a court should evaluate probable cause based on an alert from a drug detection dog when the defendant has challenged the dog's reliability. *Id.* at 1053. The court rejected Florida's rigid test that required the state in every case to present exhaustive evidence of reliability in favor of a more flexible, common-sense approach that examines the dog's training. *Id.* In so doing, the court held that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 1057. However, the court noted that a defendant "must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.* Regarding the reliability of a canine search, the United States Supreme Court has held that "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting

evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246-247, 113 S.Ct. 1050 (2013).

**{¶33}** In *State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, ¶ 55 (6th Dist.), the court stated that "proof of the fact that a drug dog is properly trained and certified is the only evidence material to a determination that a particular dog is reliable. Proof that a drug dog is properly trained and certified may be established by means of testimony or through documentary proof." The court, in *Nguyen*, noted that a "new trend in some federal courts stresses that when the state demonstrates that the drug dog is trained and certified, it negates any need to establish the reliability of the challenged canine." *Id* at paragraph 35.

**{¶34}** In order for a K9 alert to support a determination of probable cause, the State must establish the dog's reliability by adducing evidence of the K9's training and certification. *State v. Lopez,* 166 Ohio App.3d 337, 2006–Ohio–2091, 850 N.E.2d 781, ¶ 25 (1st Dist.).

**{¶35}** In the present case, appellee presented both testimony and documentary proof establishing that Atos was properly trained and certified as a narcotics-detection canine. Pursuant to *Nguyen,* this evidence was sufficient to establish the canine's reliability. In the case sub judice, extensive training and certification records for Trooper Browne and Atos were entered into evidence. This amounted to numerous pages of training records. Trooper Browne testified in detail regarding the certification process. There was testimony that the Trooper and Atos were certified by the Ohio Peace Officer Training Commission on the date of the traffic stop. Moreover, Sergeant Barrett, as an expert witness, reviewed four or five months' worth of Atos' records in announcing that

he was reliable.  Both officers were subject to cross-examination.  We find that appellant's due process rights were not violated.

**{¶36}**  Appellant, in her final assignment of error, contends that the trial court erred in determining that K9 Atos alerted to the vehicle being operated by appellant.  Appellant argues that there was not competent credible evidence that the K9 alerted to the vehicle and that  greater weight of evidence militates towards a  finding that Atos did not alert on the vehicle.

**{¶37}** A  reviewing  court  must  defer  to  the  trial  court's  factual  findings if competent, credible evidence exists to support those findings.  *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998).

**{¶38}**  In the case sub judice, both Trooper Browne and Sergeant Barrett testified that Atos alerted. In addition, the video of the stop was played for the trial court.  The trial court, in its Judgment Entry overruling the Motion to Suppress, stated, in relevant part, as follows:

**{¶39}** "The court has considered Tpr. Browne and K9 Atos's certifications and training records.  The court also has had the opportunity to review the in car video of the free air sniff performed by Tpr. Browne and K9 Atos.  The court believes that the video speaks for itself.  The court finds Tpr. Browne's testimony to be credible and consistent with what can be seen on video.  Clearly, Atos is bothered by getting a face full of exhaust fumes.  The court  find (sic)   defense witness, Andy Jimenez, to be less than credible when he testified that rather than the exhaust fumes, it was simply Atos's displaying avoidance behavior at the rear of the vehicle.  The video says otherwise in the court's opinion.

**{¶40}** "Defense witness Andy Jimenez, also says he did not see any independent alert by Atos for the presence of narcotics on the video. It is the testimony of Mr. Jimenez that everything Atos does with reference to the vehicle was simply the result of Tpr. Browne pressuring Atos to do it. Again, the court finds Mr. Jimenez to lack credibility regarding this assertion. The video shows what the court finds to be independent alerts by Atos consistent with the testimony of Tpr. Browne. Tpr. Browne's testimony is also supported by not only the video itself but also by Sgt. Barrett's testimony. The court, as fact finder in this matter, finds Tpr. Browne's and Sgt. Barrett's testimony to be more credible and more believable than Mr. Jimenez. The court further finds that the video itself is more consistent with the testimony of Tpr. Browne and Sgt. Barrett then it is with testimony of Mr. Jimenez."

**{¶41}** Upon our independent review of the video of the traffic stop, we find that the greater weight of evidence militates towards a finding that Atos alerted on the vehicle. The video show Atos attempting to crawl under the truck on rear of the driver's side.

**{¶42}** Based on the foregoing, we find that the trial court did not err in overruling the Motion to Suppress. Appellant's five assignments of error are overruled.

**{¶43}** Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, J. and

Delaney, J. concur.